Austin v. United States          CV-02-001-M    04/18/03

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Chad E. Austin,
        Petitioner

        v.                                    Civil No. 02-001-M
                                              Opinion No. 2003DNH072
United States of America,
        Respondent


**O R D E R**


Petitioner was convicted by a jury of bank robbery (18 U.S.C. § 2113(a) and (d)); use of a firearm during a crime of violence (18 U.S.C. § 924(c)); being a felon in possession of a firearm (18 U.S.C. § 922(g)(1)); interstate transportation of stolen property (18 U.S.C. § 2314); and interstate transportation of a stolen motor vehicle (18 U.S.C. § 2312).  His convictions were affirmed, but the case was remanded for re-sentencing at Total Offense Level 27, rather than 28, under the Sentencing Guidelines.  United States v. Austin, 239 F.3d 1 (1st Cir. 2001). Petitioner was re-sentenced to a combined period of imprisonment of 222 months.

Despite advice to the contrary, petitioner exercised his right to serve as his own counsel during the trial.  See <u>Faretta v. California</u>, 422 U.S. 806, 835 (1975).  He now seeks habeas relief under 28 U.S.C. § 2255, on four grounds:  1) ineffective assistance of standby counsel, in that counsel failed to effect service of trial subpoenas on two witnesses petitioner says were material to his defense; 2) the sequestration order in effect during his trial was violated in that a witness called by the prosecution, Missy Lara (a/k/a Marilyn LaFond), was in the courtroom during part of the trial;  3) evidence potentially helpful to petitioner was destroyed prior to trial, specifically, notes made by an F.B.I. agent while interviewing one of petitioner's hostage victims,[1] as well as a photograph of the hostage scene that petitioner says would have helped establish his defense of "police corruption"; 4) ineffective assistance of appellate defense counsel (for not raising the grounds asserted in 1 through 3 above); and 5) the government's failure to provide him with transcripts of all trial proceedings before his direct

---

[1] After robbing the bank in New Hampshire, petitioner led police on a wild car chase to Massachusetts, where he invaded a townhouse, taking a father and two small children hostage.  He was apprehended in Massachusetts and faced related criminal charges in that jurisdiction as well.

appeal, which deprived him of the opportunity to raise the claims described above.  None of these grounds are meritorious.

Ineffective Assistance of Standby Counsel

Petitioner knowingly and intelligently waived his right to the assistance of appointed counsel and insisted upon representing himself.  Therefore, he cannot complain about the quality of his own defense.  See United States v. Manjarrez, 306 F.3d 1175 (1st Cir. 2002).  Standby counsel was appointed to assist petitioner, but only to the extent petitioner chose to avail himself of counsel's advice.  Petitioner asserts that standby counsel failed to effect service of subpoenas on two witnesses he wanted to present at trial.  Petitioner does not say how those witnesses might have helped in his defense, but he does name them:  Keri Curley and Aaron Gildart.

Presumably, petitioner would stand on his representations prior to trial, when he sought subpoenas for Curley and Gildart. The record discloses that due to late subpoena requests filed by petitioner, and difficulties in locating and serving Curley (who

was apparently not in New Hampshire at the time) and Geldart, standby counsel was not able to effect service:

> My client and I have – my standby client and I have a problem. I'll address it with him at lunch. I understand. I don't think I've done a good job explaining it to the Court. He thinks that everybody on the list that he handwrote out that was appended to his subpoena motion were served. They were not. Maybe it's my fault. I served the ones based upon the discussion that we had last Wednesday in camera. I thought those were the only ones he wanted. I guess I misunderstood, but it's not going to be possible. We can't get those people here by Friday.

Transcript, Doc. No. 64, p. 41; see also Transcript, Doc. No. 64, p. 24.

Assuming petitioner can bring an ineffective assistance of counsel claim against standby counsel for failure to effect timely service of subpoenas issued under Fed. R. Cr. P. 17(b), his conclusory statements do not support his claim that counsel's standby performance was either deficient or that he was prejudiced by that performance. See Strickland v. Washington, 466 U.S. 668, 697 (1984)(petitioner must demonstrate that counsel's representation fell below an objective standard of

4

reasonableness, and that he was prejudiced by counsel's deficient performance). Here, neither aspect of the two-part <u>Strickland</u> test is met.

First, that the two witnesses identified by petitioner were not timely or effectively served was not entirely the fault of counsel. Petitioner's self-representation naturally resulted in a great deal of confusion about what subpoenas he was seeking and why. <u>See, e.g.</u>, Transcript, Documents No. 61 and 64. Petitioner, in large measure, contributed to the apparent misunderstanding that resulted in the failure to either obtain subpoenas or timely serve the named witnesses. But, more importantly perhaps, the failure of Ms. Curley and Mr. Geldart to testify had no prejudicial effect whatsoever on petitioner's defense, such as it was.

Keri Curley worked as a teller in the bank that petitioner robbed. It was difficult indeed to elicit from petitioner any rational reason why he would want to call her as a witness in his defense. He acknowledged during the hearing on his requests for subpoenas that, if she were to testify, he expected that she

5

would identify him as having been in the the bank (or identify physical characteristics that the robber and he both possessed). Transcript, Doc. No. 64, p. 17; see generally id. pp. 12 - 24. Petitioner seemed to want Curley to either identify him as the robber, or give a description of the robber that he could then try to impeach, by showing that she had seen television and newspaper coverage related to the robbery, including his picture, which, he would then argue, colored her testimony and tainted her identification. That evidence would hardly have helped petitioner. Putting a witness on the stand for the purpose of eliciting incriminating testimony in order to set up impeachment of that very testimony is not a strategy likely to prove helpful or successful.

Petitioner wanted to call Mr. Geldart as a witness because Geldart was apparently wearing clothing on the day of the robbery that was similar in description to that worn by the robber, and Geldart apparently otherwise fit the robber's general description. There was no other potential evidentiary connection between Geldart and the robbery. Petitioner wished to suggest to the jury that Geldart could just as easily have been the robber,

6

since Geldart was in the geographical area surrounding the bank and fit the bank robber's general description.  Transcript, Doc. No. 61, pp. 44-46.  That evidence also would not have made any difference in petitioner's case, and certainly was not related to his defense of "police corruption."  Nor would such evidence support his suggestion that while he may have been caught in a running gun battle while driving the getaway car, and was apprehended with the proceeds of the robbery, it was still possible that he got in the car only after the bank was robbed and the "real" robber abandoned the vehicle.

Because the evidence against petitioner was overwhelming, no prejudice to petitioner or his defense resulted from counsel's failure to timely serve the subpoenas at issue.  Even if counsel's representation fell below an objective standard of reasonableness in carrying out his standby responsibilities, petitioner still would not be entitled to relief under Strickland.  Petitioner fit the description of the robber; he was tied convincingly to the stolen vehicle used in the getaway; he was tied convincingly to the weapon used in the robbery; he was tied convincingly to the clothing worn by the robber; he was

7

followed while driving the stolen getaway car, engaged police in a high-speed chase that included running gun battles, and was subsequently apprehended in the yard of a townhouse to which he was followed (where he invaded the home and took hostages); he was caught with the proceeds of the robbery; and, he orally admitted robbing the bank to his wife, to a hostage, and to an FBI agent, in the presence of a state police officer, who also heard the admission. If more was needed, evidence of petitioner's own written confessional statements was introduced, in the form of a letter petitioner sent to a friend, Missy Lara (a/k/a Marylin LaFond), after the robbery, while he was incarcerated, in which petitioner wrote:

> I mean, all I did was rob a bank and run from
> the pigs. I went into some punk's house
> because the pigs were shooting at me.

Had Curley testified, she would have only added identity observations to the overwhelming evidence against petitioner. And Geldart's expected testimony - that he was wearing clothing that was perhaps similar to that worn by the robber on the day in question and happened to be in Portsmouth, New Hampshire, where the robbery took place - would have done nothing to offset the

8

overwhelming evidence against petitioner.  In short, because petitioner's defense, such as it was, was not adversely affected by the failure to serve Curley and Geldart with subpoenas in a timely fashion, petitioner cannot meet the prejudice requirement under <u>Strickland</u>, and is entitled to no relief.

<u>Violation of Sequestration Order, Spoliation of Evidence, Failure to Produce Transcripts, and Ineffective Assistance of Appellate Counsel</u>

Petitioner says that he was prejudiced by the fact that Marylin LaFond, his friend, failed to comply with the witness sequestration order in effect during his trial.  (She was unaware of the order or its requirements and no one recognized her (except perhaps petitioner) as a designated witness as she sat in the courtroom.)  Ms. LaFond's testimony was rather straightforward:  she merely related that she received a letter from a Chad Austin, that petitioner was the only Chad Austin she knew, and that the letter contained the admissions described above.  Petitioner's wife testified earlier that she recognized the handwriting in the letter as petitioner's.  LaFond could not identify the handwriting, and readily conceded on cross-

9

examination that it was possible that someone other than petitioner sent the letter.

That LaFond was in the courtroom and heard other witnesses testify, did not affect or color her own testimony at all, since she merely related the fact that she received the letter and read part of its contents. Petitioner has not identified any specific prejudice that may have resulted due to LaFond's presence while other witnesses testified, and the court can find none.

Petitioner also complains about destruction of evidence prior to trial. Specifically, he says a photograph once existed (the government denies the claim) depicting the scene at the townhouse he invaded. He says the photograph "displayed children's action figures and other children's stuff in the area of scattered money, gun clips and a gun." Petitioner claims that the photograph was somehow inconsistent with depictions of the same scene in other police photographs, and, somehow, would have supported his defense of "police corruption."

Again, the point is without merit. Such a photograph, if it existed, would hardly be exculpatory, and "police corruption" was not a plausible defense in petitioner's case, given the overwhelming evidence against him on the merits.

In a similar vein, petitioner also complains about an FBI agent's pre-trial destruction of original notes taken during an interview of one of petitioner's hostages, Paul Hardy. However, both Hardy and the FBI agent testified, were subject to vigorous cross-examination, and nothing in the record suggests that the notes would have been effective or even useful in petitioner's defense (the hostage's identification of petitioner as the assailant was unshakeable and was, of course, rather conclusively corroborated by the fact that petitioner was apprehended at the hostage's house, in possession of the stolen weapon, car, robbery proceeds, and clothing worn by the robber).

The same holds true with respect to petitioner's trancript claim. The transcripts were readily available to appellate counsel and petitioner. Taking at face value petitioner's assertion that he did not have the volumes related to his

11

Curley/Geldart subpoena issues, and was, therefore, thwarted in his effort to fully raise or brief those issues on direct appeal, he still fails to describe any ground for relief. Nothing in those transcripts suggests a viable claim regarding standby counsel's failure to timely serve subpoenas on Curely or Geldart. To the contrary, the transcripts demonstrate the complete absence of prejudice. Neither Curley's nor Geldart's anticipated testimony was necessary to the presentation of an adequate defense. Curley's identification testimony could only further inculpate petitioner, and Geldart's testimony would have added nothing to his defenses of "police corruption" and complete innocence (of the bank robbery).

These issues ordinarily could not be raised in a § 2255 proceeding, because petitioner did not raise them on direct appeal. See Knight v. United States, 37 F.3d 769 (1st Cir. 1994)(non-constitutional, non-jurisdictional claims that could have been, but were not, raised on direct appeal, may not be asserted in a § 2255 motion, absent exceptional circumstances). But, because petitioner raises them in the context of ineffective assistance of counsel claims, they have been briefly

12

addressed on the merits relative to the prejudice aspect of the Strickland test.  See id. (failure to assert ineffective assistance of counsel on direct appeal is not a bar to raising that issue in a subsequent § 2255 proceeding).

Petitioner asserts that his appellate counsel was also ineffective, because he failed to raise (most of) the issues discussed above on direct appeal.  Nothing in the petition or the record or files supports that claim.  Appellate counsel is not required to raise any and all possible issues, and certainly is not expected to raise issues devoid of legal merit.  See Smith v. Robbins, 528 U.S. 259, 288 (2000)(appellate counsel need not (and should not) raise every non-frivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal).  Since each issue identified by petitioner is without merit, and none would have resulted in any appellate relief had it been presented on direct appeal, he cannot meet either part of the Strickland test.  See Strickland, supra. Appellate counsel's performance did not fall below an objective standard of reasonableness, and, petitioner was hardly prejudiced

13

by counsel's failure to raise the identified issues on direct appeal, since they are without merit.

## Conclusion

Because the petition, files, and records of the case conclusively show that petitioner is entitled to no relief, the petition is dismissed.  28 U.S.C. § 2255.  The Clerk of Court shall close the case.


**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

April 18, 2003

cc:  Chad E. Austin, pro se
     Peter E. Papps, Esq.