which such a distinction makes sense (*e.g.*, information as to trial witnesses); but in this case there *are* practical reasons to treat the case as capital from indictment forward, for purposes of appointing learned counsel, until it becomes clear that the death penalty is no longer an option. Words used in statutes, after all, are tools and a phrase like "capital case" can mean different things in different contexts.

It appeared at oral argument that the United States Attorney in Puerto Rico has already made a recommendation in this case to the Attorney General apparently after considering a submission made by a federal public defender. There is no indication that the Attorney General has yet considered the matter, and we express no views on the consequences that our decision may have on the absence of learned counsel at the time that initial submissions were made to the United States Attorney.

*The writ of mandamus is granted.* Learned counsel shall be appointed forthwith.

UNITED STATES of America,
Appellee,

v.

Pablo MANJARREZ a/k/a Pablo a/k/a Paul Riend, Defendant,
Appellant.

No. 01–1793.

United States Court of Appeals,
First Circuit.

Heard Sept. 4, 2002.

Decided Oct. 11, 2002.

Juan Ortiz–Lebrón for appellant.

Bradley J. Schlozman, Department of Justice, with whom Margaret E. Curran, United States Attorney, was on brief for appellee.

Before BOUDIN, Chief Judge, BOWNES, Senior Circuit Judge, and LYNCH, Circuit Judge.

BOWNES, Senior Circuit Judge.

Defendant-appellant Pablo Manjarrez (a/k/a Paul Riend) appeals from his criminal conviction of one count of conspiring to distribute and to possess with intent to distribute in excess of 1,000 kilograms of marijuana in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A)(vii) (1999), and two counts of possessing with intent to distribute more than 100 kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(vii) (1999) and 18 U.S.C. § 2 (1999). Defendant raises three challenges to his conviction. He contends that (1) he did not knowingly and intelligently choose to represent himself at trial; (2) the district court erroneously rejected his standby counsel's argument that the government was required to prove that he committed the conspiracy

offense through one single transaction involving 1,000 kilograms of marijuana; and (3) the fine imposed by the court was excessive. For the reasons outlined below, we find these arguments to be without merit, and we affirm the conviction.

## I. *Background*

In April 2000, a grand jury in the District of Rhode Island indicted defendant Manjarrez on multiple counts of federal drug charges. At his arraignment, the defendant claimed indigence, and the district court appointed Edward C. Roy to serve as his attorney. Five months later, Roy filed a motion to withdraw as defense counsel. Roy informed the court that the defendant wanted him to advance a frivolous, unsound legal theory; specifically that Manjarrez had requested him to make the argument that the defendant was a corporate legal fiction, not a human being, and therefore, pursuant to the Uniform Commercial Code, the court did not have jurisdiction over him. Roy explained to the court that he had informed the defendant that this argument was without merit and would negatively affect the defense, but Manjarrez insisted on raising this legal theory and asked Roy to withdraw so that he could conduct his own defense.

The district court then engaged Manjarrez in a lengthy colloquy to determine whether he recognized and understood the magnitude and inherent dangers of his decision to represent himself at trial:

> THE COURT: Mr. Roy has correctly stated that you have a constitutional right to represent yourself and no one can deprive you of that. But he has also correctly stated that if I permit you to represent yourself at a trial of this matter, you will be held to the same standard as applies to the prosecution and to any other attorney who appears before this court, do you understand that?
>
> THE DEFENDANT: Yes, ma'am.

> THE COURT: You understand as well and I think Mr. Roy has alluded to this, that the charges against you are very serious.
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: I make no judgment whatsoever as to whether or not the Government would be able to sustain its burden of proof beyond a reasonable doubt, but the charges are very serious, and if proven to that standard, carry with them a very heavy penalty. Do you understand that?
>
> THE DEFENDANT: I understand, ma'am.
>
> THE COURT: So that the stakes here are very high.
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Do you also understand that if I permit you to represent yourself and if things happen in the course of the trial that you do, because of your ignorance of the law that are detrimental to your case, that at some point later on down the road, you can't come back and say, "Well, I changed my mind. I want to have a lawyer do it for me." Do you understand that?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: This is very serious business. And that's why I'm speaking to you in this way. Do you understand as well that I'm going to—when I say hold you to the same standard as an attorney, that if you ask a question that is improper and there's an objection made, I will have to sustain the objection and not permit you to ask it in the way you ask it or that if you make an objection that is improper, I won't be sustaining your objection. Do you understand that?
>
> THE DEFENDANT: Yes, I do.
>
> THE COURT: During the course of the trial, you'll be permitted to make an

opening statement to the jury. But if your statement is improper, I'll strike it. Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: So that you virtually won't have a voice if you do not adhere to the rules that govern the proceedings of this court.

THE DEFENDANT: I understand.

THE COURT: And with no training at all, I'm very concerned that you do not have or will not have the ability to properly represent yourself.

THE DEFENDANT: I have the willingness to learn and I have been studying—I have been studying a lot in the law library to learn as much as I can for this.

THE COURT: Well, did you want to say anything further on this point today?

THE DEFENDANT: Other than I have an intent and desire to speak for myself because only I can speak my own truth.

THE COURT: Well, speaking for yourself and representing yourself are two different things.

THE DEFENDANT: I understand that.

... THE COURT: If you want to testify, you get to say some of what you may want to say. But representing yourself in the course of a trial is different than simply making a speech, do you understand that?

THE DEFENDANT: Yes, I do.

... THE COURT: Well, I would encourage you, Mr. Riend, to reconsider the position you've taken here today as far as self-representation. I started out this hearing by saying that the charges against you are very serious, having made no judgment whatsoever as to their veracity or whether the Government can meet its burden of proof at trial. The stakes are very high. If you

are unsuccessful at trial due to any of your own actions, you can't then say, "Well, it was my lawyer's fault," because you're the lawyer and this is a choice you're making, knowing the consequences and knowing the pitfalls. Do you understand that?

THE DEFENDANT: Yes, ma'am.

The judge then granted his request to proceed *pro se* and appointed Roy as standby counsel to advise him on applicable laws and procedures. The judge informed Manjarrez that if he reconsidered his decision before the trial, she would reappoint counsel for him, and she explicitly told him that she thought he was "making a big mistake."

Later, at the final pre-trial hearing, the judge rejected the defendant's motion to dismiss on the grounds that the court lacked jurisdiction over him, explaining that his legal theory was incomprehensible and that the laws he cited were irrelevant to a criminal proceeding. The judge once again urged Manjarrez to reevaluate his choice to conduct his own defense, but he repudiated her advice and the case proceeded to trial. At the start of the trial, the defendant made a brief opening statement referencing his jurisdictional theory, but for the remainder of the proceedings the defendant chose not to raise objections, to cross-examine the government's witnesses, or to present witnesses on his behalf, despite suggestions from his standby counsel and reminders from the court of his right to do so.

After the prosecution presented its case, Manjarrez's standby counsel sought permission from the court to make a motion for a judgment of acquittal on the conspiracy charge, pursuant to Fed.R.Crim.P. 29. The trial judge asked the defendant if he wanted Attorney Roy to take over his defense on that motion, and when he did not object she allowed Roy to present it. In

support of his motion, Roy claimed that a conviction on the conspiracy charge required evidence that Manjarrez and his co-conspirators possessed with intent to distribute or distributed over 1,000 kilograms of marijuana as part of one single transaction rather than through multiple transactions, and he maintained that the government had failed to produce such evidence. The trial judge rejected this argument, noting first, that a conspiracy conviction may be based on the aggregation of drug quantities from multiple transactions, provided those transactions were a reasonably foreseeable consequence of the conspiracy, and second, that the evidence presented was sufficient for the jury to make such a finding.

The jury returned a guilty verdict on all three counts charged in the indictment. At sentencing, Manjarrez asked that his standby counsel "represent the person in the Indictment," and the trial judge appointed Attorney Roy as his counsel for sentencing and post-trial matters. After ruling on Roy's objections to the probation office's presentencing report, the court sentenced Manjarrez to a term of imprisonment of 190 months, to be followed by a five year term of supervised release, and imposed a fine of $20,000 and a special assessment of $300. This appeal followed; the defendant has been represented by counsel throughout the appeal process.

## II. *Discussion*

### A. *Defendant's Right to Self–Representation*

■ Defendant's principal argument on appeal concerns his decision to represent himself at trial. He argues that his waiver of counsel was neither knowing nor intelligent, and therefore the district court should not have let him proceed *pro se.* We review the district court's decision for abuse of discretion. *See United States v. Woodard,* 291 F.3d 95, 109 (1st Cir.2002);

*United States v. Proctor,* 166 F.3d 396, 401 (1st Cir.1999).

■ It is well settled that a criminal defendant has a Sixth Amendment right to reject appointment of counsel and to conduct his own defense, provided that he makes his choice "knowingly and intelligently." *Faretta v. California,* 422 U.S. 806, 835, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464–65, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)); *see also Proctor,* 166 F.3d at 401. Given the potential adverse consequences associated with self-representation, a trial judge must be sure the accused "knows what he is doing and his choice is made with eyes open." *Faretta,* 422 U.S. at 835, 95 S.Ct. 2525 (quoting *Adams v. United States ex rel. McCann,* 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268 (1942)). This court has declined to prescribe a specific warning for the trial court or a formulaic waiver for the criminal defendant. Instead, we have adopted a more contextual inquiry for determining the legitimacy of a defendant's waiver of counsel:

> An intelligent waiver does not require that the accused have the skill or knowledge of a lawyer. What is required, we think, is a sense of the magnitude of the undertaking and the disadvantages of self-representation: an awareness that there are technical rules governing the conduct of a trial, and that presenting a defense is not a simple matter of telling one's story. In addition, the accused should have a general appreciation of the seriousness of the charge and the penalties he may be exposed to before deciding to take a chance on his own skill.

*Maynard v. Meachum,* 545 F.2d 273, 279 (1st Cir.1976) (internal quotation marks and citations omitted).

In *United States v. Campbell,* 874 F.2d 838, 845 (1st Cir.1989), we enumerated other factors that a court could consider in

determining whether there was an intelligent waiver of counsel: "The district court may properly consider, in addition to [the defendant's] background, experience and conduct, such factors as his involvement in previous criminal trials, his representation by counsel before trial, and the continued presence of advisory counsel at trial." (Citations omitted.)

■ Contrary to the defendant's assertion, the record here clearly demonstrates that he knowingly and intelligently waived his right to counsel. Despite receiving repeated warnings about the hazards of self-representation from his appointed defense counsel, Manjarrez insisted that his counsel withdraw so that he could present his own defense. After his appointed counsel conveyed his request to the court, the trial judge exhaustively questioned the defendant to ensure that he understood not only the gravity of the charges facing him and their potential penalties upon conviction, but also his obligation to comply with the rules of the court when presenting his case. The judge also explicitly warned the defendant that she thought he was "making a big mistake" that would have "dire consequences," and repeatedly invited him to reconsider his decision.

■ On appeal, the defendant contends that the trial judge had a duty to make a more searching inquiry regarding the validity of his waiver of counsel upon learning that he intended to advance a frivolous jurisdictional theory with no basis in statutory or case law. Neither the law nor the record supports this argument. The Supreme Court has plainly held that "[t]he *pro se* defendant must be allowed to control the content and organization of his own defense." *McKaskle v. Wiggins,* 465 U.S. 168, 174, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984). The right to self-representation is not contingent on a defendant's legal knowledge or skill. *See Faretta,* 422 U.S. at 835, 95 S.Ct. 2525. A trial judge cannot reject a defendant's right to proceed *pro se* simply because he chooses a poor legal strategy. Although a *pro se* defendant "may conduct his own defense ultimately to his own detriment, his choice must be honored out of that respect for the individual which is the lifeblood of the law." *Id.* at 834, 95 S.Ct. 2525. The record in this case reveals that Manjarrez understood that the judge would hold him to the same standards and obligations as any attorney appearing before the court, and she would strike from the record any improper statements and arguments made in his defense. In fact, the judge made painstaking efforts to ensure that the defendant understood that he "virtually [would not] have a voice" if he failed to adhere to the relevant rules of trial procedure. While Manjarrez's defense theory may demonstrate that he lacked legal acumen, it does not indicate that he lacked the capacity to choose self-representation knowingly and intelligently.

■ Equally without merit is the defendant's argument on appeal that the trial judge should have terminated his right to proceed *pro se* when it became apparent that he was representing himself poorly. Once a defendant knowingly and intelligently foregoes his right to counsel, he "cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel'." *Faretta,* 422 U.S. at 834 n. 46, 95 S.Ct. 2525; *see also United States v. Benefield,* 942 F.2d 60, 66 (1st Cir.1991) ("The fact that [the *pro se* defendant] was not a very effective advocate does not mean he was improperly permitted to proceed without the aid of counsel."). In the instant case, both the court and his standby counsel repeatedly reminded the defendant of his right to raise objections and to cross-examine witnesses. With the exception of allowing his standby counsel to argue the Rule 29 motion on the conspiracy charge, the defendant obstinately chose to ignore this advice

and confined his defense to his jurisdictional theory. Although Manjarrez's "choice may not have been wise, it was nevertheless knowing, voluntary, and intelligent." *Benefield,* 942 F.2d at 66.

## B. *Rule 29 Motion for Acquittal*

■ Manjarrez further argues that the district court erroneously denied his motion for judgment of acquittal, claiming that the presented evidence was insufficient to show that he conspired to distribute more than 1,000 kilograms of marijuana. We review his claim *de novo. See United States v. Baltas,* 236 F.3d 27, 35 (1st Cir.2001).

■ We note at the outset that the defendant does not contest the government's evidence that he distributed over 1,900 kilograms of marijuana. Instead, he contends that the government was required to prove that he committed the conspiracy offense through *one single transaction* involving more than 1,000 kilograms of marijuana. He claims that total drug quantities from individual transactions may not be aggregated even when those multiple transactions are components of an overall conspiracy. We disagree. A conspiracy charge is a single offense, and a "narcotics conspirator is responsible not only for the full quantity of drugs that he actually handled or saw but also for the full quantity of drugs that he reasonably could have foreseen to be embraced by the conspiracy he joined." *United States v. Rodriguez,* 162 F.3d 135, 149 (1st Cir.1998). Thus, the district court did not err in ruling that a conspirator is responsible for the aggregate amount of drug quantities from multiple transactions, provided those transactions were reasonably foreseeable and part of the conspiracy charged.

## C. *The Validity of the Fine*

■ Manjarrez's final argument on appeal warrants little discussion. The defendant contends that his indigent status at the time of sentencing barred the district court from imposing a $20,000 fine upon him. Manjarrez, who was represented by counsel at the sentencing hearing, did not object to the fine below, and consequently we review the district court's assessment of the fine for plain error. *See United States v. Rowe,* 268 F.3d 34, 38 (1st Cir. 2001).

■ The Sentencing Guidelines require a district court to "impose a fine in all cases, except where the defendant establishes that he is unable to pay and he is unlikely to become able to pay any fine." U.S.S.G. § 5E1.2(a). This court has held that the defendant bears the burden of proving both a current and future inability to pay the fine. *See Rowe,* 268 F.3d. at 38. The district court found that Manjarrez failed to meet that burden, noting that he has the intelligence and skills to work and earn the funds necessary to pay the fine upon his release. We find no plain error in that ruling.

*We affirm.*