2006 ME 80

STATE of Maine

v.

Hank WATSON.

and

State of Maine

v.

Jonathan Blumberg.

Supreme Judicial Court of Maine.

Argued: Nov. 14, 2005.

Decided: July 6, 2006.

R. Christopher Almy, District Attorney, C. Daniel Wood, Asst. Dist. Attorney (orally), Bangor, Evert N. Fowle, District Attorney, Alan Kelley, Deputy Dist. Atty. (orally), James G. Mitchell, Asst. Dist. Atty., Skowhegan, G. Steven Rowe, Attorney General, William R. Stokes, Asst. Atty. Gen. (orally), Augusta, (as amicus curiae), for State.

Charles E. Gilbert III, Esq. (orally), Gilbert & Greif, P.A., Bangor, Robert H. Conkling, Esq. (orally), Wright & Mills, P.A., Skowhegan, for Maine Ass'n of Criminal Defense Lawyers (amicus curiae).

Gail M. Latouf, Esq., Westbrook, John D. Pelletier, Esq. (orally), Goodspeed & O'Donnell, Augusta, for Defendants.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.

Majority: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, and LEVY, JJ.

Dissent/Concurrence: DANA and SILVER, JJ.

Dissent/Concurrence: CALKINS, J.

LEVY, J.

[¶ 1] These criminal appeals call upon us to consider the measures required to assure valid waiver of the right to counsel guaranteed by the Sixth Amendment to the United States Constitution and article I, section 6 of the Maine Constitution when a criminal defendant proceeds to trial without counsel. We consolidated these cases for briefing and argument together with *State v. Gach*, 2006 ME 82, 901 A.2d 184, but they arise from unrelated prosecutions and different procedural paths. We conclude that Hank Watson's waiver of counsel met constitutional requirements and affirm his conviction, but that Jonathan Blumberg's waiver of counsel did not meet constitutional requirements and thus we vacate his conviction.

## I. BACKGROUND

[¶ 2] Hank Watson appeals from a judgment of conviction entered in the Superior Court (Penobscot County, *Hjelm, J.*) after a jury found him guilty of operating under the influence (Class D), 29–A M.R.S.A. § 2411(1) (1996).[1] Jonathan Blumberg appeals from a judgment of conviction entered in the Superior Court (Somerset County, *Jabar, J.*) after a jury found him guilty of terrorizing (Class D), 17–A M.R.S. § 210(1)(A) (2005), and disorderly conduct (Class E), 17–A M.R.S. § 501(2) (2005). Both defendants were unrepresented at the time of their convictions.

---

1. Title 29–A M.R.S.A. § 2411(1) has since been repealed by P.L.2003, ch. 452, § Q–77 (effective July 1, 2004), and replaced by P.L. 2003, ch. 452, § Q–78 (effective July 1, 2004) (codified at 29–A M.R.S. § 2411(1–A) (2005)).

Each asserts that the trial court erred by explicitly or implicitly finding that he had effectively waived the right to counsel.

### A. *State v. Hank Watson*

[¶ 3] Hank Watson was charged with two civil violations and operating under the influence in June 2003. He was arraigned in the District Court (Bangor, *LaVerdiere, J.*), at which time he indicated that he had heard and understood the group instruction, and understood the charges as explained by the court. With respect to the OUI charge, Watson stated: "I understand the charge, your honor, and I will be seeking counsel." The court separately asked Watson whether "[y]ou are going to be seeking your own counsel?" Watson responded, "Yes, sir," to which the court responded, "I'll make a note to that effect." The court then advised Watson of his right to a jury trial, and Watson's obligation to file the jury trial request form within twenty-one days if he wished to have a jury trial. Watson responded, "Yes. I—I'd like to have the form so that when I do confer with counsel I can make my decision," and that "I'll be … contacting my counsel within a week."

[¶ 4] The case was transferred to the Superior Court for a jury trial, and Watson appeared in court without counsel for pre-trial proceedings and jury selection. When asked by the court whether he was still representing himself, Watson responded, "I will bring in counsel if I need to. I've discussed it with the gentleman standing there." The record does not reflect to whom Watson was referring. After a break, the court returned to Watson's case as part of its management of the trial list, and asked Watson, "Did you say that you could have an attorney come in to try the case?" Watson replied, "Well, I was considering the possibility of doing that." The discussion then turned to the availability of certain witnesses, and then, after another break, the court proceeded with jury selection.

[¶ 5] On the day of trial, two days after jury selection, Watson again appeared in court without counsel. The court noted that Watson was "representing his own interests." This was followed by a lengthy discussion between the court, Watson, and the prosecutor, regarding the State's decision that it would not seek to introduce evidence regarding the results of Watson's blood-alcohol test at trial, but would instead proceed solely on the allegation in the complaint that Watson was under the influence. The colloquy also addressed whether evidence of Watson's prior OUI conviction, as alleged in the complaint, would be considered by the jury separate from the evidence associated with the new offense alleged in the complaint. During the discussion, Watson told the court that he had read the OUI statute, and he demonstrated an understanding of the significance of his prior conviction to the pending charge and, more generally, the substance of the pending charge.

[¶ 6] The court next asked Watson if he was familiar with the trial process and if he had been through a trial before. Watson said, "Yes, to some degree." The court continued, "And I take it you've chosen to represent yourself in this case." Watson replied, "Yes. If I feel I'm in trouble, I would like to reserve the privilege to call for a brief recess and call counsel." The court replied, "Well, if that situation arises, you can let me know and I'll be as accommodating as I can, keeping in mind the jury's situation as well." There was no further discussion of stand-by counsel.

[¶ 7] The court then explained the trial process to Watson. This included an explanation of the opportunity to offer opening and closing statements, the presumption of innocence, the calling and ex-

amination of witnesses, the presentation of evidence, the making of objections, the defendant's right to testify or not, jury instructions, and the verdict. The court then asked Watson if he had any questions regarding the trial process or any other issues before the trial began, to which Watson replied, "No, sir." The jury found Watson guilty and the court sentenced Watson, who had a prior OUI conviction, to ten days in jail, a $600 fine, and an eighteen-month suspension of his right to operate a motor vehicle.

## B. *State v. Jonathan Blumberg*

[¶ 8] Jonathan Blumberg was arrested in April 2003 after he allegedly made a threatening phone call to an attorney and was charged with terrorizing and disorderly conduct. At his initial appearance in District Court (Skowhegan, *Stitham, J.*), the State indicated that it intended to seek jail time. When asked if he wished the court to determine if he qualified for court-appointed counsel, Blumberg stated:

Blumberg: Um, I just got a copy of the affidavit on Friday for that.

Court: Okay. Are you [going to] be asking the Court for court-appointed counsel?

Blumberg: I may ask for stand-by counsel. At this point your honor, I'm representing myself.

[¶ 9] That day, Blumberg received the assistance of court-appointed counsel for purposes of the initial appearance only. After Blumberg spoke with the attorney, he entered a plea of not guilty. The court again asked him if he intended to ask for court-appointed counsel. Blumberg stated, "I'll be considering that. I'll post the affidavit as quickly as possible."

[¶ 10] Two days later, Blumberg filed his motion for appointment of counsel and the accompanying affidavit. In the motion, Blumberg wrote that he intended to proceed pro se but was asking for appointment of stand-by counsel and associated expenses. In the affidavit, under "other assets," Blumberg stated that he lived in a house with an assessed value of $62,500. He elaborated that the house was "in the estate of [his] late mother," and that he was the executor. The District Court (*Clapp, J.*) declined to appoint counsel, finding that Blumberg was not indigent because he "appear[ed] to have access to equity to real estate."

[¶ 11] Thereafter, Blumberg filed several motions, including a demand for a jury trial, and the case was transferred to Superior Court. At a hearing on the State's motion to amend the complaint, the trial court (Somerset County, *Jabar, J.*), asked Blumberg if he intended to proceed without counsel. Blumberg informed the court that his request for appointment of counsel had been denied because the District Court determined that he had equity in real estate. He requested that the Superior Court review that decision and informed the court that "[the house] is owned by the estate of my mother. And I've tried to borrow money on it before, and I can't because of that." Blumberg further explained that he was one of two heirs. After discussing the status of the estate with Blumberg, the trial court responded:

Court: [Y]ou were turned down, because you have an asset that's worth half of this house, which is at least $30,000. In reviewing it I'm not going to change the decision that was made initially regarding your appointment of counsel.

Blumberg: Okay.

Court: I cannot find you indigent. So are you going to be proceeding pro se? You're not going to retain an attorney; is that correct?

Blumberg: I don't have a choice.

Court: You have a choice. You can retain one if you want to. You're not retaining an attorney? You're going to represent yourself?

Blumberg: Yes.

[¶ 12] There was no additional discussion between the court and Blumberg regarding Blumberg's decision to proceed to trial without an attorney. A second hearing was held two weeks later on a variety of motions filed by Blumberg. At neither motion hearing did the court address with Blumberg the risks of proceeding without counsel, inquire of his knowledge of court procedures, or inform Blumberg of the requirements of the trial process.

[¶ 13] Approximately one week after the hearing on pending motions, the case proceeded to trial over a three-day period. No mention was made of Blumberg's decision to represent himself during this period. At the conclusion of the trial, the jury found Blumberg guilty, and the court continued the case for sentencing. Pending the sentencing hearing, Blumberg filed a new motion for the appointment of counsel. Although Blumberg did not submit a new financial affidavit, the court found him indigent and appointed counsel. Blumberg's court-appointed counsel represented him at the sentencing hearing. On the terrorizing charge, the court sentenced Blumberg to 364 days in the county jail, suspending all but 100 days, and probation for one year. A lesser jail sentence was imposed on the disorderly conduct charge and made concurrent to the jail sentence on the terrorizing charge.

## II. DISCUSSION

[¶ 14] Writing in *United States v. Proctor,* 166 F.3d 396, 402 (1st Cir.1999), Judge Coffin characterized the constitutionally-guaranteed right of representation by counsel as "a right of the highest order." The right to counsel afforded by

article I, section 6 of the Maine Constitution is commensurate with that of the Sixth Amendment of the federal constitution. *See State v. Gallant,* 595 A.2d 413, 416 (Me.1991). For those who cannot afford counsel, the constitutional right imposes an affirmative obligation on the State to provide court-appointed counsel if the defendant faces incarceration whether because of a plea of guilty or no contest, or after trial. *See Scott v. Illinois,* 440 U.S. 367, 373–74, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979); *State v. Cook,* 1998 ME 40, ¶ 6, 706 A.2d 603, 605; M.R.Crim. P. 44(a).

[¶ 15] Constitutional rights, including the right to counsel, may be waived as long as the waiver is voluntary, knowing, and intelligent. *State v. Caldwell,* 2003 ME 85, ¶¶ 8, 10, 828 A.2d 765, 767, 768; *see Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). However, because it is a fundamental constitutional right, the right to representation by counsel requires that every reasonable presumption must be indulged against waiver. *Michigan v. Jackson,* 475 U.S. 625, 633, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986); *Johnson,* 304 U.S. at 464, 58 S.Ct. 1019 (articulating a strong presumption against waiver of counsel).

[¶ 16] Our review is focused on the question of under what circumstances a voluntary, knowing, and intelligent waiver of the right to counsel occurs. We consider, in turn, (A) the procedures by which courts assure that an effective waiver has occurred; (B) the standard of appellate review; and (C) the application of the resulting principles to Watson's and Blumberg's cases.

A. Procedures Regarding Waiver of the Right to Counsel

[¶ 17] The Sixth Amendment guarantees the right to counsel at all "crit-

ical stages" of the criminal process. *Iowa v. Tovar*, 541 U.S. 77, 87, 124 S.Ct. 1379, 158 L.Ed.2d 209 (2004) (quotation marks omitted). The Supreme Court has described the trial court as the protector of the defendant's right to counsel because "[t]he Sixth Amendment ... embodies a realistic recognition of the obvious truth that the average defendant does not have the professional legal skill to protect himself when brought before a tribunal with power to take his life or liberty ...." *Johnson*, 304 U.S. at 462–63, 465, 58 S.ct. 1019. Courts evaluate whether a defendant's waiver of the right to counsel was voluntary, knowing, and intelligent by considering whether the defendant was informed of the right to counsel by the court, as well as the totality of relevant circumstances "including the background, experience, and conduct of the accused." *State v. Morrison*, 567 A.2d 1350, 1352 (Me.1990) (hereinafter "*Morrison I*").

[¶ 18] At the plea stage, less rigorous "[w]arnings of the pitfalls" of proceeding without counsel are required than at the trial stage and "a less searching or formal colloquy may suffice." *Tovar*, 541 U.S. at 89, 124 S.Ct. 1379. At the trial stage, more rigorous warnings of the dangers of proceeding without counsel are required because " 'counsel is required to help even the most gifted layman' " follow the procedural and technical requirements of the trial process. *Id.* (quoting *Patterson v. Illinois*, 487 U.S. 285, 299 n. 13, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988)). Before a defendant may proceed to trial without a lawyer, "he must be warned specifically of the hazards ahead" and the "[w]arnings of the pitfalls of proceeding to trial without counsel ... must be rigorous[ly] conveyed." *Id.* at 88–89, 124 S.Ct. 1379 (quotation marks omitted). In *Faretta v. California*, the Supreme Court explained the reason for rigorous warnings:

When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must knowingly and intelligently forego those relinquished benefits. Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open.

422 U.S. 806, 835, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) (citations and quotation marks omitted); *see also Martinez v. Court of Appeal of California*, 528 U.S. 152, 162, 120 S.Ct. 684, 145 L.Ed.2d 597 (2000).

[¶ 19] A trial court cannot presume that a defendant has waived counsel simply because he or she appears at trial without one. *Carnley v. Cochran*, 369 U.S. 506, 513–14, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962). Such a presumption would place a defendant in the position of affirmatively safeguarding his or her right to counsel, a presumption that is the opposite of the presumption required by the Supreme Court. *Id.* at 513–15, 82 S.Ct. 884; *see also Johnson*, 304 U.S. at 464, 58 S.Ct. 1019.

[¶ 20] The importance of the need for the court to affirmatively address the right to counsel with a defendant proceeding to trial without representation is evident in our prior decisions. We have found valid waivers of a criminal defendant's right to counsel at the trial stage where the court "fully advised [the defendant] of his right to counsel prior to trial and on the day of trial," *State v. Morrison*, 1998 ME 220, ¶ 2, 723 A.2d 869, 869 (hereinafter "*Morrison*

*II* "); where "[t]he trial justice thoroughly explained the dangers of proceeding *pro se* to [the] defendant before he permitted [the] defendant to exercise his right of self-representation," *State v. Barrett,* 577 A.2d 1167, 1172 (Me.1990); where the court informed the defendant of his constitutional right to have counsel and found that "[t]he defendant was knowledgeable of his right to counsel," *Morrison I,* 567 A.2d at 1352; where the defendant "was made aware of the dangers of waiving his right to the assistance of counsel, ... knew what he was doing, and ... his choice was made with eyes open," *State v. Walls,* 501 A.2d 803, 805 (Me.1985) (quotation marks omitted); and where it was "clear from the record that [the defendant] was not indigent and that he received more than ample warning of the dangers of proceeding without counsel," *State v. Gaudette,* 431 A.2d 31, 32 (Me.1981). *See also People v. Providence,* 2 N.Y.3d 579, 780 N.Y.S.2d 552, 813 N.E.2d 632, 634 (2004) (finding a valid waiver because "the trial judge repeatedly and adequately warned [the defendant] of the dangers of self-representation, and gave him several opportunities to express a change of heart").

[¶ 21] In contrast, in *State v. Tomah* the defendant announced that he would represent himself following a brief colloquy in which the judge merely asked whether the defendant intended to represent himself or apply for a court-appointed attorney. 560 A.2d 575, 575–76 (Me.1989). We concluded from this colloquy that it was "readily apparent" that the defendant had not "knowingly and intelligently waived his right to counsel," and vacated the conviction. *Id.* at 576.

[¶ 22] Although the Supreme Court has been unequivocal about the need for warnings, it has not identified specific warnings or information that a trial court must address with a defendant who is about to proceed to trial without an attorney.[2] In *Morrison I,* we similarly declined to adopt fixed "*Miranda*-like warnings of the risks of self-representation and the benefits of counsel," but we also did not address the information the court should discuss with the defendant, or the significance of the absence of any judicial warnings whatsoever. 567 A.2d at 1353.

[¶ 23] Other jurisdictions have addressed the information that a self-represented defendant should receive as generally including: (1) the right to be represented by a lawyer at trial and the right to be considered for a court-appointed lawyer if the defendant cannot afford to hire a lawyer; (2) that the defendant will be held to the same standards as a lawyer and the trial court will not aid the defendant in his defense; and (3) that it is risky for persons untrained in

2. The use of warnings to give effect to the Sixth Amendment was considered in *Patterson v. Illinois,* 487 U.S. 285, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988). There, the Supreme Court contrasted the need to warn an unrepresented defendant of the dangers of submitting to questioning without counsel at the post-indictment, pre-trial stage, with the need to warn of the dangers of proceeding to trial at the trial stage. *Id.* at 299, 108 S.Ct. 2389. The Court concluded that at the pre-trial stage, *Miranda* warnings were sufficient to inform a defendant of Fifth and Sixth Amendment rights, but that at the trial stage:

> [We] require a more searching or formal inquiry before permitting an accused to waive his right to counsel at trial than we require for a Sixth Amendment waiver during post[-]indictment questioning—*not* because post[-]indictment questioning is less important than a trial (the analysis that petitioner's hierarchical approach would suggest)—but because the full dangers and disadvantages of self-representation during questioning are less substantial and more obvious to an accused than they are at trial.
> *Id.* (citations and quotation marks omitted).

the law to represent themselves because, unlike lawyers, they are not trained to identify possible defenses, follow the rules of procedure and the rules of evidence, or conduct a trial, including selecting a jury, questioning witnesses, admitting and objecting to evidence, and arguing the case. *See generally* John S. Herbrand, Annotation, *Accused's Right to Represent Himself in State Criminal Proceeding—Modern State Cases*, 98 A.L.R.3d 13, § 6.5 (Supp.2005) (citing cases); *see also Morrison I*, 567 A.2d at 1355 (Wathen, J., dissenting). The level of detail of the information provided by the court may be calibrated to the defendant's individual circumstances. *See United States v. Pfeifer*, 371 F.3d 430, 435 (8th Cir.2004); *United States v. Manjarrez*, 306 F.3d 1175, 1180 (1st Cir.2002); *United States v. Woodard*, 291 F.3d 95, 102 (1st Cir. 2002); *State v. Bluitt*, 850 A.2d 83, 88–89 (R.I.2004). Nevertheless, the record should reflect that the court addressed the preceding elements with the defendant in some fashion.

■ [¶ 24] In sum, we do not adopt a rigid formula for determining whether a defendant was adequately informed of the risks of proceeding to trial without representation, but we adhere to the admonition expressed in *Faretta* and followed in our decisions that a defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." *Faretta*, 422 U.S. at 835, 95 S.Ct. 2525 (quotation marks omitted). This requirement is compelled by the Sixth Amendment to the United States Constitution as well as article I, section 6 of the Maine Constitution. Cautionary information from the trial court ensures that a defendant proceeding without the benefit of trained representation is, in fact, doing

so with knowledge of the risks of foregoing this most fundamental constitutional right.

■ [¶ 25] Although the question of whether a valid waiver occurred must be based on the totality of circumstances, including a defendant's background, experience, and conduct, only in exceptional cases can these factors establish that a defendant *who received no warning or information of any kind* from the court knew of and understood the risks of conducting a trial without an attorney. In those exceptional cases, the record should demonstrate:

> that the defendant was aware of the existence of technical rules and that presenting a defense is not just a matter of telling one's story. Accordingly, only rarely will adequate information exist on the record, in the absence of a colloquy, to show the required awareness of the risks of self-representation.

*City of Bellevue v. Acrey*, 103 Wash.2d 203, 691 P.2d 957, 962 (1984) (citations omitted); *see also United States v. Campbell*, 874 F.2d 838, 846 (1st Cir.1989); *State v. Thornton*, 800 A.2d 1016, 1027–28 (R.I. 2002); *State v. Deroche*, 682 So.2d 1251, 1252 (La.1996); *State v. Frampton*, 737 P.2d 183, 188 (Utah 1987).

■ [¶ 26] Therefore, when a defendant intends to represent her or himself at trial, the court should address the *Faretta*-related information with the defendant. The court can then determine whether, under the totality of circumstances including the defendant's background, experience, and conduct, the defendant's waiver of the right to counsel is made voluntarily, knowingly, and intelligently. If the court concludes that the defendant has not voluntarily, knowingly, and intelligently waived the right to counsel, the court must afford the defendant a reasonable opportunity to hire counsel or apply for court-appointed counsel.

[¶ 27] We hasten to add that courts are not compelled to postpone scheduled trials based solely on a defendant's request, in response to *Faretta* warnings, that the trial be postponed so that he or she will have an opportunity to hire counsel or apply for court-appointed counsel. A defendant's "stubborn failure" to hire counsel or apply for court-appointed counsel after having been informed of the right to do so may form the basis for a voluntary, knowing, and intelligent waiver, *Morrison II*, 1998 ME 220, ¶ 4, 723 A.2d at 870, if the court also finds that the defendant fully understood the right to counsel and the dangers of self-representation apart from the court's *Faretta* warnings. As with the right to jury trial, the right to counsel may be waived by a defendant's inaction. *See State v. Holmes*, 2003 ME 42, ¶¶ 7–8, 818 A.2d 1054, 1056–57.

[¶ 28] Accordingly, in the case of a stubborn failure to hire counsel or apply for court-appointed counsel, a court may determine that, notwithstanding a defendant's newly-stated desire for representation, he or she voluntarily, knowingly, and intelligently waived the right to counsel and must proceed to trial without representation if all of the following criteria are met. First, the defendant was properly informed of and understood the right to counsel and the opportunity to apply for court-appointed counsel at an initial appearance or other court event, and had a reasonable opportunity to follow up on such information. Second, the defendant unreasonably failed to seek retained counsel or apply for court-appointed counsel in a timely fashion prior to trial. *See Morrison II*, 1998 ME 220, ¶ 4, 723 A.2d at 870; *State v. Winchenbach*, 501 A.2d 1282, 1285 (Me.1985); *State v. Ayers*, 464 A.2d 963, 966–67 (Me.1983). Third, the defendant's background, experience, conduct, and other pertinent information establish that the defendant "fully apprehend[ed] the nature of the charges against him, the perils of self-representation, and the requirements that will be placed upon him." *United States v. Peppers*, 302 F.3d 120, 133 (3rd Cir.2002); *see also United States v. Kimball*, 291 F.3d 726, 730–31 (11th Cir.2002); *Bluitt*, 850 A.2d at 88–89; *Commonwealth v. Martin*, 425 Mass. 718, 683 N.E.2d 280, 282 (1997).

## B.   Standard of Appellate Review

[¶ 29] We have previously employed both the abuse of discretion and clear error standards of appellate review when considering challenges to a trial court's determination that a criminal defendant effectively waived the right to representation by counsel. *Compare Tomah*, 560 A.2d at 576 (reviewing a finding of waiver for an abuse of discretion), *with Walls*, 501 A.2d at 805 (reviewing "the record in the light most favorable to the court's ruling to determine whether the record will support a finding of a knowing and intelligent waiver"). *See also Morrison I*, 567 A.2d at 1351–52 (reviewing for clear error); *accord Morrison II*, 1998 ME 220, ¶ 4, 723 A.2d at 870.

[¶ 30] The standard of review that we applied in *Walls* was derived from cases that considered the waiver of a defendant's *Miranda* rights, *see, e.g., State v. Valentine*, 443 A.2d 573, 577 (Me.1982) (citing *State v. Bleyl*, 435 A.2d 1349, 1358 (Me. 1981); *State v. Collins*, 297 A.2d 620, 625 (Me.1972)), or waiver of Fifth Amendment rights before *Miranda* was decided, *see State v. Grover*, 96 Me. 363, 365–66, 52 A. 757, 758–59 (1902). The standard of review in those cases was based on the premise that whether a waiver is made voluntarily, knowingly, and intelligently is purely an issue of fact. However, in *State v. Coombs*, 1998 ME 1, ¶ 9, 704 A.2d 387, 390, which was decided after *Walls*, we

adopted for the review of the voluntariness of confessions and waivers of *Miranda* rights the bifurcated standard enunciated by the United States Supreme Court in *Miller v. Fenton,* 474 U.S. 104, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985), whereby the trial court's findings of fact are reviewed for clear error and the legal conclusion to be drawn from those facts is reviewed de novo. We said in *Coombs* that whether there has been an effective waiver of *Miranda* rights "has a 'uniquely legal dimension' " and for this reason, independent appellate review is appropriate. *Coombs,* 1998 ME 1, ¶ 13, 704 A.2d at 391 (quoting *Miller,* 474 U.S. at 116, 106 S.Ct. 445). Thus, the decisional underpinning for the standard of review applied in *Walls* is no longer valid.[3]

[¶ 31] Deciding whether, under the totality of circumstances, a criminal defendant has made an effective waiver of the right to counsel has a "uniquely legal dimension," *Miller,* 474 U.S. at 116, 106 S.Ct. 445, which is in the nature of a legal conclusion that warrants de novo review. However, to the extent the trial court makes findings of fact relevant to the waiver analysis, or its findings can reasonably be inferred from the record, it is appropriate to afford deference to such findings and review them for clear error. *See State v. LaBare,* 637 A.2d 854, 856 (Me.1994) (concluding that the trial court's findings that could be inferred from the record were not clearly erroneous, but expressing a preference for explicit findings regarding waiver). Accordingly, we will apply a bifurcated standard of review, reviewing any express or implicit factual findings for

clear error, and the legal conclusion to be drawn from those facts de novo.

C. Review of Waiver Procedures Followed in Watson's and Blumberg's Cases

1. *State v. Hank Watson*

[¶ 32] The record establishes that when Watson proceeded to trial without a lawyer, he was not directly warned "of the pitfalls of proceeding to trial without counsel." *Tovar,* 541 U.S. at 89, 124 S.Ct. 1379. It also establishes, however, that Watson knew of and understood his right to representation by counsel, comprehended the nature of the charges against him, and, as a result of the court's detailed explanation of the trial process, was made aware of the requirements that would be placed upon him at trial and, by necessary implication, the risks of self-representation. Watson was undoubtedly "aware of the existence of technical rules and that presenting a defense is not just a matter of telling one's story." *Acrey,* 691 P.2d at 962. At no point in this proceeding has he claimed that he was without the means to hire an attorney.

[¶ 33] As previously observed, the scope and level of a trial court's effort to communicate *Faretta*-related information to a defendant may be calibrated to the defendant's individual circumstances. Watson, who informed the court that he had a college degree, demonstrated an understanding of his right to counsel at his initial appearance and at subsequent court hearings, participated in a lengthy discussion with the court and the prosecutor regarding the nature of the charges

---

**3.** The federal courts of appeals "uniformly apply a de novo standard of review to a District Court's conclusion of law that a defendant has waived his right to counsel." *United States v. McBride,* 362 F.3d 360, 365 (6th Cir.2004). Many states do the same.

*See, e.g., City of Fargo v. Habiger,* 682 N.W.2d 300, 304 (N.D.2004); *People v. Russell,* 471 Mich. 182, 684 N.W.2d 745, 749 (2004); *State v. Rater,* 568 N.W.2d 655, 657 (Iowa 1997); *People v. Arguello,* 772 P.2d 87, 92 (Colo. 1989).

against him in which he demonstrated personal familiarity with the OUI statute, and continued in his desire to represent himself after he received a detailed explanation from the trial court regarding the requirements of the trial process. As the Superior Court implicitly concluded from these circumstances, we also conclude that Watson's waiver of the right to counsel was voluntary, knowing, and intelligent. *See Peppers,* 302 F.3d at 133 (requiring that the defendant "fully apprehend[] the nature of the charges against him, the perils of self-representation, and the requirements that will be placed upon him" for valid waiver). Accordingly, we affirm his conviction.

### 2. *State v. Jonathan Blumberg*

[¶ 34] Unlike Watson, who was made aware of the dangers of trying a case without counsel through the court's detailed explanation of what would be expected of him at trial, Blumberg received no warning of what lay ahead. *Cf. Walls,* 501 A.2d at 805 (premising the finding of a valid waiver on the defendant having been "made aware of the dangers of waiving his right to the assistance of counsel"). There is simply no basis to conclude from the trial record that warnings of the "pitfalls of proceeding to trial without counsel" were "rigorous[ly] conveyed" to Blumberg, *Tovar,* 541 U.S. at 89, 124 S.Ct. 1379 (quotation marks omitted), or that Blumberg otherwise demonstrated an understanding of the risks of self-representation. *See Acrey,* 691 P.2d at 962.

[¶ 35] As we stated in *Tomah,* if a defendant is told no more than that he or she has the right to either seek counsel or represent himself at trial, we "have no trouble ... in concluding" that such a "record is woefully inadequate" to support a finding of a knowing and intelligent waiver. 560 A.2d at 576. We apply the strong presumption against the waiver of a fundamental constitutional right, *see Johnson,* 304 U.S. at 464, 58 S.Ct. 1019, and conclude that because Blumberg did not receive any warnings or information related to the inherent risks of proceeding to trial without counsel, he did not knowingly and intelligently waive his right to counsel.

[¶ 36] The denial of the right to counsel is a structural error for which harm is presumed because it "casts such doubt on the fairness of the trial process, that it can never be considered harmless error." *Penson v. Ohio,* 488 U.S. 75, 88, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988) (citing *Satterwhite v. Texas,* 486 U.S. 249, 256, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988)); *see also United States v. Gonzalez–Lopez,* 548 U.S. ——, 126 S.Ct. 979, 163 L.Ed.2d 722 (2006); *Rose v. Clark,* 478 U.S. 570, 577–78, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986); *McKaskle v. Wiggins,* 465 U.S. 168, 177 n. 8, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984); *Holloway v. Arkansas,* 435 U.S. 475, 489, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978); *Peppers,* 302 F.3d at 127; *State v. Martin,* 608 N.W.2d 445, 453 (Iowa 2000); *United States v. Mateo,* 950 F.2d 44, 48 n. 8 (1st Cir.1991). Because the error associated with Blumberg's trial was not harmless, we vacate his conviction. Accordingly, we do not reach his additional argument that the court erred when it initially concluded that he did not financially qualify for a court-appointed counsel.

### III. CONCLUSION

[¶ 37] The right to representation by counsel is "a right of the highest order," *Proctor,* 166 F.3d at 402, and "courts indulge every reasonable presumption against" its waiver, *Johnson,* 304 U.S. at 464, 58 S.Ct. 1019. At the trial stage, the risks associated with proceeding to trial without an attorney must be made apparent to an unrepresented defendant by way

of warnings, instructions, a colloquy, or some other means. Far from being mere formalisms, these communications assure that the right to representation by counsel retains its vitality as a cornerstone of our shared concept of justice.

The entry is:

In *State of Maine v. Hank Watson*, Pen–03–715, the judgment is affirmed. In *State of Maine v. Jonathan Blumberg*, Som–03–576, the judgment is vacated and the case is remanded for further proceedings consistent with this opinion.

SILVER, J., with whom DANA, J. joins, concurring in part and dissenting in part.

[¶ 38] I respectfully dissent from the Court's holding in *State v. Watson* that Hank Watson knowingly and intelligently waived his right to counsel, despite the fact that the trial court never warned him of the perils and pitfalls of self-representation. Unlike the majority, I believe that such an admonition from the trial court is a fundamental and necessary element of a criminal defendant's waiver of his constitutional right to counsel. Because Watson did not receive any warnings from the trial court concerning his decision to represent himself at trial, I would vacate his judgment of conviction and remand for further proceedings.

[¶ 39] The majority recognizes that a criminal defendant's right to representation by counsel is one of the most basic and fundamental of constitutional rights. *See supra* ¶ 14; *see also* U.S. CONST. amend. VI; MAINE CONST. art. I, § 6. Of course, the corollary to the right of representation by counsel is the right of a criminal defendant to represent himself at trial. *See Faretta v. California*, 422 U.S. 806, 832, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). The balance that a trial court must strike to ensure that a criminal defendant has elected to exercise one of

these competing rights, and, by necessary implication, elected to waive the other, is a fine one. *State v. Walls*, 501 A.2d 803, 806 (Me.1985). When a criminal defendant makes the decision to waive his right to counsel and proceed to trial without counsel, the trial court may validate the choice only so long as the defendant "is made aware of the dangers of self-representation, and the record reflects that 'he knows what he is doing and his choice is made with eyes open."' *State v. Barrett*, 577 A.2d 1167, 1171 (Me.1990) (quoting *Walls*, 501 A.2d at 805). On this point, the United States Supreme Court has stated:

> When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must "knowingly and intelligently" forgo those relinquished benefits. Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open."

*Faretta*, 422 U.S. at 835, 95 S.Ct. 2525 (internal citations omitted) (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268 (1942)). In other words, the waiver of the right to counsel must be voluntary, knowing, and intelligent, with "every reasonable presumption ... indulged against waiver." *Supra* ¶ 15.

[¶ 40] The question at once emerges as to what exactly is a knowing and intelligent waiver of the right to counsel. It is here where I diverge from the majority. Although the Court holds today that a trial court *should* give the defendant the *Faret-*

*ta* warning and implies that Watson was aware of the risks of self-representation without having received such a warning, I believe that the constitution *requires* the trial court to give a criminal defendant a warning concerning the dangers of self-representation before such a waiver may be properly effectuated. *See Patterson v. Illinois,* 487 U.S. 285, 298, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988) (noting that because of the "enormous importance and role that an attorney plays at a criminal trial," the Supreme Court has "imposed the most rigorous restrictions on the information that must be conveyed to a defendant, and the procedures that must be observed, before permitting him to waive his right to counsel at trial"); *Iowa v. Tovar,* 541 U.S. 77, 89, 124 S.Ct. 1379, 158 L.Ed.2d 209 (2004) ("Warnings of the pitfalls of proceeding to trial without counsel ... must be rigorous[ly] conveyed.") (quotation marks omitted); Michael J. Kelly, Note, *Making Faretta v. California Work Properly: Observations and Proposals for the Administration of Waiver of Counsel Inquiries,* 20 ST. JOHN'S J. LEGAL COMMENT. 245, 269–76 (2005). Anything less falls short of this standard. *See, e.g., United States v. Davis,* 269 F.3d 514, 518–19 (5th Cir.2001); *United States v. Brown,* 823 F.2d 591, 599 (D.C.Cir.1987) (noting that that court has required district courts in its circuit to "engage defendants in a short discussion on the record regarding [the] dangers and disadvantages" of self-representation) (quotation marks omitted); *State v. Young,* 626 So.2d 655, 656 (Fla.1993) (requiring the use of *Faretta* warnings); *People v. Arguello,* 772 P.2d 87, 97 (Colo.1989) ("[B]efore a reviewing court can find a valid implied waiver based on conduct, there must be ample, unequivocal evidence in the record that the defendant was advised properly in advance of the consequences of his actions."); *State v. Carter,* 107 Or.App. 48, 810 P.2d 872,

873–74 (1991). Not only have other jurisdictions embraced this constitutional view, but our own precedent also supports it. *See, e.g., State v. Tomah,* 560 A.2d 575, 575–76 (Me.1989) (vacating defendant's judgment of conviction because he was not, among other things, warned of the dangers of proceeding pro se at trial); *see also State v. Gaudette,* 431 A.2d 31, 32 (Me. 1981) (stating that defendant "received more than ample warning of the dangers of proceeding without counsel" at trial); *cf. State v. Morrison,* 567 A.2d 1350, 1352 (Me.1990). In *Barrett,* we affirmed the trial court's finding that the defendant knowingly and intelligently waived his right to counsel when the trial court informed the defendant of his right to counsel, "thoroughly explained the dangers of proceeding *pro se* to defendant before [it] permitted defendant to exercise his right of self-representation," and explained to the defendant the consequences of so acting. 577 A.2d at 1172.

[¶ 41] Not only is there a constitutional dimension to requiring the trial court to warn a criminal defendant, there are significant practical reasons for these warnings to be explicitly given. It is only after the criminal defendant has received such a warning from the trial court that the record can reflect that the defendant truly appreciated the task of self-representation. The defendant may then, after hearing the warning from the court, realize that knowing one's case is not nearly enough; one must be intimately familiar with the technical rules of evidence and procedure in order to get that knowledge before the fact-finder. The defendant may also then realize that the State is represented by a trained, skilled attorney well versed in those same rules, who, for this reason and generally because of experience, has every advantage vis-à-vis the self-represented defendant, and will likely utilize any oppor-

tunity that he is given arising from the pro se defendant's inexperience or lack of trial knowledge.[4] The United States Supreme Court has even recognized that " 'a pro se defense is usually a bad defense, particularly when compared to a defense provided by an experienced criminal defense attorney.' " *Martinez v. Court of Appeal of California*, 528 U.S. 152, 161, 120 S.Ct. 684, 145 L.Ed.2d 597 (2000) (quoting John F. Decker, *The Sixth Amendment Right to Shoot Oneself in the Foot: An Assessment of the Guarantee of Self–Representation Twenty Years after* Faretta, 6 SETON HALL CONST. L.J. 483, 598 (1996)). These factors weighing against a criminal defendant who decides to go it alone at trial, taken together, lead me to the inescapable conclusion that a criminal defendant, in order to appreciate his decision to waive the right to counsel, must be made aware of these significant ramifications.

[¶ 42] As the foregoing suggests, in order for a criminal defendant's waiver of the right to counsel to be knowing and intelligent, the defendant, at a minimum, must be warned of the dangers of proceeding at trial without counsel. Although I recognize that our precedents do not require the trial court to give a criminal defendant a standardized, one-size-fits-all warning, I believe that the trial court should be required to cover the following points through warnings, instructions, or colloquy with the defendant to ensure that that defendant is made aware of the consequences associated with that decision:

- If you are convicted of the charges brought against you, you are very likely facing significant restrictions on your personal liberty, including jail time, probation, and/or a fine;

- During the course of the trial, you will be held to the same standard as an attorney;

- Before an attorney conducts a trial, he or she will have received extensive training in the law in general, and in the rules of evidence and court procedure in particular;

- You will be expected to follow the technical rules of evidence and court procedure and you will be expected to be aware of the ways in which the Maine Supreme Judicial Court has interpreted those rules;

- You will be responsible for selecting a jury, making an appropriate opening and closing statement, knowing what is admissible evidence, knowing how to get that evidence before the finder of facts, knowing how to properly conduct a direct and cross-examination of a witness, and knowing how to properly ask questions of witnesses;

- You will be opposed at trial by a prosecutor who has received years of training in his or her profession, and who is knowledgeable both in criminal law and in the rules of evidence and court procedure;

- Although you may be at a disadvantage in this case, considering your knowledge of the law and rules of evidence and court procedure, and the fact that the State is represented by a trained attorney, the court cannot and

---

4. The California Court of Appeal summed up this point best in an accurate, although dated, analogy:

 [T]he prosecution will be represented by an experienced professional counsel who, in turn, will give him no quarter because he does not happen to have the same skills and experience as the professional. In other words, from the standpoint of professional skill, training, education, experience, and ability, it will definitely not be a fair fight. It would be Joe Louis vs. a cripple, or Jack Nicklaus vs. a Sunday hacker.

 *People v. Lopez,* 71 Cal.App.3d 568, 138 Cal. Rptr. 36, 39 (1977).

will not act as your coach or advisor; thus, even if you make a mistake in the course of the trial, the court will not give you any privileges, benefits, or assistance because you are representing yourself; as the court has said, you will be held to the same standard as an attorney;

● There are technical issues surrounding appeals, and there are certain motions and objections that you must make before, during, and after trial in order for you to properly preserve the particular issue for appeal; if an issue is not preserved for appeal, the Maine Supreme Judicial Court will likely not consider the issue, and, if it does, it will likely apply a deferential standard of review to the so-called unpreserved issue; and

● Finally, you do have the right to counsel, and, if you qualify, you may have one appointed for you at government expense.

[¶ 43] Turning to the facts of the instant case, the record confirms that the trial court did not warn Watson of the dangers and disadvantages of proceeding to trial without counsel. Although the court generously took the time to review the general rule of hearsay, as well as the general nature of the charges brought against him, including the use of his prior conviction of OUI to enhance his sentence, and the order of presentation of testimony and argument, such review falls short of the constitutional requirement that the "pitfalls of proceeding to trial without counsel ... must be rigorous[ly] conveyed." *Tovar*, 541 U.S. at 89, 124 S.Ct. 1379 (quotation marks omitted) (citing *Patterson*, 487 U.S. at 298, 108 S.Ct. 2389). Without a warning of these "pitfalls," it is not clear that Watson was made to appreciate what was expected of him at trial or the risks of self-representation. Accordingly, I do not believe that Watson's waiver of the right to

counsel was knowing and intelligent. In light of the court's failure to properly warn Watson, we should hesitate before finding that he waived his right to counsel. *See Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) (stating that a court must "indulge every reasonable presumption against waiver of fundamental constitutional rights") (quotation marks omitted).

[¶ 44] The facts of this case call to mind the words of Justice Wathen dissenting in *Morrison*, words that are particularly resonant today: "Because the dangers of self-representation are so apparent and yet so easily forgotten, we must protect the right to counsel with more rigorous procedures than those employed in this case." 567 A.2d at 1356 (Wathen, J. dissenting). Because the majority does not go far enough in protecting this fundamental constitutional right, or in ensuring a proper basis for the trial court to determine that a criminal defendant has adequate knowledge of what he is foregoing by waiving the right to counsel, I dissent from the Court's holding in *State v. Watson*.

CALKINS, J., dissenting in part and concurring in part.

[¶ 45] I respectfully dissent from Part II(C)(1) of the Court's opinion affirming the judgment of conviction of Hank Watson. I concur in Part II(B) of the Court's opinion regarding the standard of review and in Part II(C)(2) vacating the judgment of conviction of Jonathan Blumberg.

[¶ 46] Like Justice Silver, I dissent from Part II(C)(1) because the record does not demonstrate that Watson knowingly, intelligently, and voluntarily waived his right to counsel. I write separately, however, because unlike Justice Silver, I do not conclude that the trial court's failure to warn Watson about the pitfalls of self-represen-

tation requires us to conclude that there was not a knowing, intelligent, and voluntary waiver. I agree that ordinarily a trial court should warn the pro se defendant with language similar to that suggested in Justice Silver's dissent. However, I do not go so far as to say that warnings are required in every case. I believe that there are cases in which a trial court's express finding of waiver of the right to counsel could be affirmed, even in the absence of warnings. For example, when the trial court articulates the facts that form the basis for its finding of a voluntary and intelligent waiver, and such facts are supported by the record, an appellate court should affirm the waiver finding. Even an implicit finding of waiver could be affirmed in the absence of warnings when the record is replete with facts showing a voluntary and intelligent waiver sufficient to overcome the strong presumption against waiver. *See Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

[¶ 47] In this case, the court neither warned Watson of the pitfalls of self-representation nor expressly stated the facts that led it to find that Watson had knowingly, voluntarily, and intelligently waived his right to counsel. The record may be sufficient to support an implicit finding that Watson knew he had a right to counsel and understood the substance of the charge against him, but it is devoid of evidence that he understood that there would be technical and procedural rules that he would be expected to follow, that he would be at a disadvantage, and that he would be held to the same standards as an attorney. Given the strong presumption against waiver of the right to counsel, the absence of warnings of the pitfalls of self-representation, and of any findings by the court regarding the knowledge of Watson and the voluntariness of his waiver, the record is insufficient to support a finding

that Watson "fully apprehend[ed] ... the perils of self-representation, and the requirements that will be placed upon him," *United States v. Peppers,* 302 F.3d 120, 133 (3d Cir.2002). For this reason, I would vacate Watson's conviction.