2006 ME 81

**STATE of Maine**

v.

**Priscilla OUELLETTE.**

Supreme Judicial Court of Maine.

Submitted on Briefs: March 22, 2006.

Decided: July 6, 2006.

Mark E. Lawrence, District Attorney, John Pluto, Asst. Dist. Atty., Alfred, for State.

Philip Notis, Esq., South Portland, for Defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.

CALKINS, J.

[¶ 1] Priscilla Ouellette appeals from a judgment of conviction of terrorizing (Class D), 17–A M.R.S. § 210(1)(A) (2005); assault (Class D), 17–A M.R.S. § 207(1)(A) (2005); refusing to submit to arrest or detention (Class D), 17–A M.R.S. § 751–A(1)(B) (2005); and refusing to sign a uniform summons and complaint (Class E), 17–A M.R.S. § 15–A(1) (2005), entered in the District Court (Biddeford, *Kennedy, J.*) following a bench trial. Ouellette's only contention on appeal is that the court erred in finding that she voluntarily, knowingly, and intelligently waived her right to a jury trial. We agree with her contention and vacate the judgment.

## I.  BACKGROUND

[¶ 2] The terrorizing charge against Ouellette stems from an encounter she had with her former step-daughter during a charity event on the afternoon of March 6, 2005, at the Elks Lodge in Saco. The charges of assault, refusing to submit to arrest, and refusing to sign a uniform summons and complaint arose later that same day at the police station when a police officer told Ouellette that she would be summonsed on the terrorizing charge. She became agitated and said she would not sign the summons. She tried to leave the room, pushing a second police officer in the process. The second police officer told her she was under arrest for assault, and the officers handcuffed her and took her to the booking room.

[¶ 3] After spending that night and the next morning in the York County Jail, Ouellette was taken to the District Court on March 7, 2005. The court (*Wheeler, J.*) addressed a courtroom audience apparently composed of prisoners and others. The court instructed the audience as follows:

> COURT: All right. Good afternoon.... I'm going to advise you of your rights, and then I'm going to go through your cases one at a time. I understand that there are three people in the general audience who were supposed to have been here on another date and are here unscheduled, and I'd ask that you listen, as well, because you're basically in the same position as the people who are in orange. You're just not wearing orange. Your rights are as follows: You are presumed to be innocent unless and until the State proves beyond a reasonable doubt each and every element of the crime with which you are charged. You have the right to

remain silent. You're not required to answer any questions or make any statements. However, anything you do say can and will be used against you. You do have the right to have an attorney represent you at every stage of the proceedings. If you cannot afford an attorney and there is a risk that you will go to jail if convicted, the Court will appoint an attorney to represent you after today. Today [the attorney for the day] has been appointed to represent you, and by now he should have spoken to most of you. He is a free attorney for today, and if you need an attorney after today, you will have to apply for an attorney, and we'll give you a form to do that. You also have the right to a speedy jury trial, and at the trial, you have the right to be represented by an attorney. You have the right to confront and cross-examine the State's witnesses against you. You have the right to call witnesses on your own behalf, and you have the right to testify or to decline to testify at trial. At trial, the State will have the burden of proving beyond a reasonable doubt each and every element of the crime with which you are charged. Now, most of you will probably be here on misdemeanors— Class D or E crimes. A misdemeanor carries—a Class D misdemeanor carries as a maximum penalty up to a year in prison. A Class E carries up to six months in jail. If you are here on a felony—a Class A, B, or C—your sentences could be much longer. A Class C felony which is the least serious of the felonies carries a maximum of up to five years in prison. There will be other things that you need to know, but I will be telling them to you individually because each of your cases are slightly different. Let me begin.

[¶ 4] After the general instruction, the court addressed Ouellette.

COURT: Priscilla Ouellette? Miss Ouellette, you're being charged with terrorizing a Judy [L.], assaulting Scott [R.], and refusing to submit to an arrest, and failing to sign a uniform summons. These are alleged to have occurred on March 6th, 2005 in Saco. The Class D's are punishable by up to a year in jail. [A]re any of these domestic violence crimes?

[PROSECUTOR]: No, your Honor.

COURT: All right. So, you are looking at up to a year in jail, you understand that, ma'am?

MS. OUELLETTE: (Inaudible response).

COURT: Is there risk of jail?

[PROSECUTOR]: Um, possibly probation, your Honor.

COURT: All right. So, there is a risk of jail. I will enter not guilty to . . . all four counts. Trial will be on May 2nd at 8:30 in the Biddeford District Court. And is there an agreement concerning bail?

UNIDENTIFIED SPEAKER: Yes.

[¶ 5] A discussion then took place between the court, the prosecutor, Ouellette, and the unidentified speaker about bail and whether additional charges for driving to endanger and criminal mischief, alleged to have occurred a month earlier, were pending. There was no mention of the right to a jury trial in that discussion.

[¶ 6] The "unidentified speaker" in the transcript is presumably the person referred to in the court's general instruction as the "free attorney for today." The official transcript states that Ouellette appeared pro se, and the docket entries do not indicate that she was represented at the March 7 court appearance. However, there is handwriting on the back of the criminal complaint that indicates that an

attorney appeared at Ouellette's March 7 court appearance and that gives the attorney's name.

[¶ 7] On April 20, 2005, Ouellette submitted a motion for appointment of counsel. The court (*Foster, J.*) found her indigent and appointed counsel. The appointed counsel requested a continuance of the May 2 trial date, which the court granted, setting the new trial date for July 18.

[¶ 8] Before trial commenced on July 18, Ouellette's counsel stated that she was requesting a jury trial. Her counsel told the court:

> I'm not sure she fully understands her rights with regard to request for jury trial. I think we might need to take some testimony from her on this request.... [I]t's an issue she believes strongly in and [she] wants these cases to proceed only in front of a jury.

The court responded:

> Well, I'm not going to take any testimony on that, and I'm also going to deny the request for ... jury trial. The Court is at great pains to explain what the Rules are in the arraignment speech. We give everybody individualized notice that there's a twenty-one day deadline for requesting a jury trial. [H]aving said that, if there's a trial, we'll have it today.

[¶ 9] Ouellette's counsel requested a recess, and when the trial resumed, the court indicated that it might reconsider its earlier ruling if a transcript of Ouellette's arraignment was available and if the transcript showed that she had not been advised of her right to a jury trial. Counsel said he did not have a transcript, but that even if a transcript demonstrated that she had been told about her right to a jury trial and how to exercise that right, she did not understand her jury trial rights. Counsel again requested an opportunity for Ouellette to testify as to what she understood. The request was denied.

[¶ 10] The bench trial proceeded with several witnesses, and the court found Ouellette guilty on the four charges. The court sentenced Ouellette to ninety-six hours in the county jail, all suspended, and placed her on administrative release for twelve months on the terrorizing conviction. The court sentenced her to concurrent suspended sentences of eighteen hours in jail on the assault and refusing to submit to arrest charges. On the refusing to sign the uniform summons and complaint offense, the court imposed a fine of $250.

## II. DISCUSSION

### A. Right to a Jury Trial

[redacted] [¶ 11] The Sixth Amendment to the United States Constitution guarantees the right to a jury trial in a prosecution for a serious criminal offense. *Duncan v. Louisiana,* 391 U.S. 145, 148–50, 159, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). The Maine Constitution guarantees the right to a jury trial in all criminal prosecutions. ME. CONST. art. I, § 6; *State v. Lenfestey,* 557 A.2d 1327, 1327–28 (Me.1989). The right to a jury trial is a fundamental right. *State v. Holmes,* 2003 ME 42, ¶ 11, 818 A.2d 1054, 1057.

[redacted] [¶ 12] The right to a jury trial can be waived. *Patton v. United States,* 281 U.S. 276, 298–99, 50 S.Ct. 253, 74 L.Ed. 854 (1930). The waiver of a constitutional right is the " 'intentional relinquishment or abandonment of a known right.' " *United States v. Olano,* 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)). The waiver of a jury trial is only effective if it is voluntary and intelligent. *Holmes,* 2003 ME 42, ¶ 8, 818 A.2d at

1057; *see also Patton,* 281 U.S. at 312, 50 S.Ct. 253.

[¶ 13] The Maine Rules of Criminal Procedure provide that in prosecutions for murder or Class A, B, or C crimes, a waiver of a jury trial must be in writing and can only be effective with the approval of the court. M.R.Crim. P. 23(a). In prosecutions for Class D and E crimes, originating in the District Court, our rules require the defendant to make a demand for a jury trial within twenty-one days of arraignment, and when a defendant fails to demand a jury trial within that time limit, the defendant is deemed to have waived the jury trial right. M.R.Crim. P. 22(a). The District Court is required to inform a defendant charged with a Class D or E offense at the defendant's initial appearance in court of the right to a jury trial and the need to make a demand for a jury trial. M.R.Crim. P. 5(c)(2).

[¶ 14] We have held that before a court can conclude that a defendant charged with a Class D or E offense has waived the right to a jury trial, the arraignment court must have taken "affirmative steps reasonably designed to make *each* defendant *himself* aware of his individual right to a jury trial and of the demand that he must make within 21 days." *State v. Rowell,* 468 A.2d 1005, 1007–08 (Me.1983). We have also held that so long as the rule requiring a defendant charged with a Class D or E offense to demand a jury trial is administered in a manner that conforms with the *Rowell* decision, the rule

meets the requirements of the Maine Constitution. *Lenfestey,* 557 A.2d at 1328.

[¶ 15] In *State v. Rowell,* the arraignment court addressed an unidentified group of people and explained that any defendant charged with a Class D or E offense had twenty-one days to decide whether he or she wanted a jury trial. 468 A.2d at 1006. The court later addressed Rowell personally about the charge against him but said nothing to him about a jury trial. *Id.* Rowell was convicted of a Class D offense after a bench trial, and, on appeal, he contended that he was denied his right to a jury trial. *Id.* We stated that a mass instruction regarding the right to a jury trial was not enough to comply with the rule and allow a finding of waiver.[1] *Id.* at 1007–08 & n. 3. We vacated Rowell's conviction and remanded to the Superior Court for a jury trial. *Id.* at 1008.

[¶ 16] In *State v. Lenfestey,* the defendant was arraigned in a group, and the group was told about the right to a jury trial and that the manner to obtain a jury trial was to fill out a form that each person had been given and file it within twenty-one days. 557 A.2d at 1328. Then the court "questioned Lenfestey individually to make sure she understood the consequences of failing to make an affirmative demand for a jury trial within in 21 days." *Id.* In addition, when Lenfestey asked for a jury trial after the twenty-one days had passed, "[s]he acknowledged that she received the jury demand form and fully understood the instruction ...." *Id.* Be-

---

1. In *United States v. Frechette,* 372 F.Supp.2d 669, 675 (D.Me.2005), the defendant was indicted for possession of a firearm by a person convicted of a misdemeanor crime of domestic violence. The federal statute required that the underlying domestic violence conviction, if obtained in a jurisdiction where the person was entitled to a jury trial, be the result of a jury trial, or be obtained after the defendant's knowing and intelligent waiver of a jury trial.

*Id.* at 671. The federal court dismissed the indictment because it found that the defendant's 1996 arraignment in a Maine District Court did not satisfy the requirements of *Rowell* and, therefore, the defendant had not knowingly and intelligently waived his jury trial right. The arraignment court had given an appropriate mass instruction but did not address the defendant individually as to his right to a jury trial. *Id.*

cause Lenfestey had been notified of her right and understood her right and the time limit, we concluded that Lenfestey was appropriately deemed to have voluntarily and intelligently waived her right to a jury trial. *Id.*

[¶ 17] A more recent case concerning the waiver of a jury trial is *State v. Holmes*, 2003 ME 42, 818 A.2d 1054. There, the trial court found that the defendant waived his jury trial right because he did not make a demand for a jury trial within twenty-one days of his arraignment. *Id.* ¶ 4, 818 A.2d at 1056. The defendant, who was convicted of a Class D offense after a bench trial, appealed on the basis that he had been denied his constitutional right to a jury trial. *Id.* ¶ 1, 818 A.2d at 1055–56. Because no transcript of the arraignment existed, there was no record that the defendant, who was unrepresented at his arraignment, had been advised of his right to a jury trial. *Id.* ¶ 2, 818 A.2d at 1056. The defendant testified that he had been given "some paper work" at his arraignment, but we concluded that this evidence was not sufficient to show that the arraignment court had taken the necessary steps to inform the defendant of his jury trial rights and how to obtain a jury trial. *See id.* ¶ 12, 818 A.2d at 1057–58. We reiterated that in order for a court to conclude that a defendant has knowingly and intelligently waived his right to a jury trial, there must be evidence that the defendant was advised of the jury trial right and how to exercise that right.[2] *Id.* ¶ 11, 818 A.2d at 1057. Furthermore, evidence that the arraignment court instructed a group about the jury trial right is not enough to demonstrate that the defendant

heard and understood that he had a right to a jury trial and that if he wanted to exercise that right he had to make a jury trial demand within twenty-one days. *Id.* ¶ 9, 818 A.2d at 1057.

[¶ 18] In *State v. Gordon*, 2001 ME 34, ¶ 6, 766 A.2d 75, 77, the defendant challenged his conviction on the ground that he had not been informed of his right to a jury trial. We affirmed the defendant's conviction of a Class D offense even though "[t]he court did not individually advise Gordon at his arraignment of his right to a jury trial, how to secure a jury trial, or that failure to make a timely request constitutes a waiver of this right." *Id.* ¶¶ 1–2, 766 A.2d at 76. We distinguished *Rowell* on the ground that Gordon was represented at his arraignment and throughout the proceedings by retained counsel, and "[t]he rules anticipate that a defendant will be informed of the rights addressed in Rule [5(c)(2)] by counsel when the defendant is represented at arraignment ...." *Id.* ¶ 8, 766 A.2d at 77. We noted that Gordon's counsel had acknowledged that the failure to file a timely jury trial demand was due to his office procedures, and we concluded that Gordon's failure to file a timely jury trial demand was not related to the court's failure to inform him of his jury trial rights. *Id.* ¶ 9, 766 A.2d at 77.

[¶ 19] *Rowell* and *Holmes* require that, for Class D and E offenses originating in the District Court, the arraignment court make an individual inquiry of a defendant to ascertain that the defendant has in fact been notified of the right to a jury trial and the manner of

---

**2.** M.R.Crim. P. 22(a) does not set forth any particular manner for demanding a jury trial for a Class D or E crime originating in the District Court. Presumably, an oral demand to the court or the clerk's office would suffice, but we are aware that the courts have a form entitled "Jury Trial Request," and that this form is often handed to defendants at arraignment. By making the jury trial demand in writing, either by using the form or otherwise, the defendant assures that there will be written evidence of the demand.

exercising that right, and whether the defendant has been warned that unless the right is exercised within twenty-one days it will be lost.[3] The *Gordon* decision clarifies that a deemed waiver may be valid, even when the court has not conducted this colloquy, if the defendant is represented because one of the circumstances to be considered by a court in evaluating the validity of the waiver is whether the defendant was represented at the arraignment and throughout the process.

## B. Standard of Review

[¶ 20] In our most recent case concerning the waiver of the right to a jury trial, we said that we reviewed the record " 'in the light most favorable' " to the court's finding of waiver, and we cited to *State v. Walls*, 501 A.2d 803, 805 (Me.1985). *Holmes*, 2003 ME 42, ¶ 6, 818 A.2d at 1056. In *Holmes*, we also said that the defendant had the burden of establishing that the finding of waiver was clearly erroneous, and we cited to *State v. Morrison*, 567 A.2d 1350, 1351 (Me.1990). *Holmes*, 2003 ME 42, ¶ 6, 818 A.2d at 1056.

[¶ 21] In *State v. Watson*, 2006 ME 80, ¶ 31, 900 A.2d 702, 713, we announced that when reviewing whether there has been an effective waiver of the right to counsel, "we will apply a bifurcated standard of review, reviewing any express or implicit factual findings for clear

error, and the legal conclusion to be drawn from those facts de novo." We stated that the "decisional underpinning" of the standard of review applied in *State v. Walls* was no longer valid. *Id.* ¶ 30, 900 A.2d at 713. Here, we apply the same bifurcated standard that we adopted in *Watson*. We review express or implicit factual findings of the trial court for clear error, and we review the legal conclusions to be drawn from the facts de novo.[4] *Id.* ¶ 31, 900 A.2d at 713.

## C. Whether Ouellette Knowingly and Intelligently Waived the Right to a Jury Trial.

[¶ 22] The State concedes that the transcripts from the mass instruction and Ouellette's arraignment demonstrate that the court did not adequately apprise Ouellette of the right to a jury trial at her arraignment. Although the mass instruction stated that there is a right to a speedy jury trial, there was no instruction to the group as to the twenty-one-day time period or how to make a demand for a jury trial. When the court addressed Ouellette individually, it did not tell her about the need to make a demand for a jury trial or the twenty-one-day limit.

[¶ 23] When Ouellette appeared for trial, she requested a jury trial and the opportunity to present evidence regarding her lack of understanding of her jury trial rights. In the absence of the arraignment tran-

---

3. When, as is often the case, there is a mass instruction to a group of defendants and that mass instruction informs the defendants of the jury trial right and how to exercise it, the requirements of *Rowell* and *Holmes* are satisfied by three brief questions to the defendant: (1) "Were you present in the courtroom a few minutes ago when I (or the videotape) explained everyone's rights?"; (2) "Do you understand those rights, including the right to a jury trial?"; and (3) "Do you understand that if you want a jury trial you must demand it within twenty-one days or you will lose the right to have your trial in front of a jury?"

*See State v. Holmes*, 2003 ME 42, ¶ 9, 818 A.2d 1054, 1057. There are obviously numerous ways of phrasing the questions, as long as the court is satisfied at the end of the questioning that the defendant heard and understood the right.

4. Other jurisdictions utilize the de novo standard of review for waivers of the jury trial right. *See, e.g., State v. Foote*, 149 N.H. 323, 821 A.2d 1072, 1074 (2003); *State v. Stallings*, 658 N.W.2d 106, 108 (Iowa 2003).

script, the trial court assumed that she had been made aware of the right to a jury trial at her arraignment because "[w]e give everybody individualized notice that there's a twenty-one day deadline for requesting a jury trial." Essentially, the trial court assumed the regularity of the arraignment process and assumed that Ouellette had been told of her jury trial right and the need to make a demand within twenty-one days. As the court could not have known, but the transcripts now demonstrate, that assumption was incorrect.

[¶ 24] If we relied only on *Rowell* and *Holmes*, we would have to conclude that Ouellette did not knowingly and intelligently waive her right to a jury trial because the court did not inform her in either the mass instruction or individually of the need to demand a jury trial within twenty-one days. The State, however, argues that, pursuant to *Gordon*, the colloquy required by *Rowell* and *Holmes* is limited to unrepresented defendants, and that Ouellette was not an unrepresented defendant because she had the benefit of the "lawyer for the day" at her arraignment.

[¶ 25] We are aware that Maine courts in many locations have a practice of acquiring the services of an attorney, acting as the lawyer for the day, to advise criminal defendants who are otherwise without counsel regarding their rights and their cases. The lawyer for the day sometimes negotiates with the State on behalf of defendants who are interested in disposing of their cases on the arraignment day. The lawyer for the day sometimes stands with the defendant and represents the defendant in a bail hearing. The lawyer for the day is generally considered to have entered a limited appearance on behalf of the defendants the lawyer speaks to, but the extent of the attorney-client relationship is undefined.[5] Lawyers for the day perform a vital service in many of our courts, and without their services, the arraignment sessions would be more unwieldy and difficult than they already are.

[¶ 26] The question thus arises as to whether Ouellette's representation at her arraignment by the lawyer for the day, assuming that she was in fact represented, is a circumstance that warrants a finding that her waiver of a jury trial was knowing and intelligent. The only argument that the State makes in this appeal is that Ouellette was in the same position as the defendant in *Gordon* and, therefore, her waiver was knowing and intelligent. In *Gordon*, the retained attorney represented the defendant at the arraignment and throughout the proceedings. 2001 ME 34, ¶ 8, 766 A.2d at 77. Although we said in *Gordon* that the criminal rules anticipate that when a defendant is represented at arraignment by counsel, counsel will inform the defendant of the jury trial right, we were not referring to a lawyer for the day.

[¶ 27] A defendant represented by an appointed lawyer for the day is in a different situation from the defendant in *Gordon*. Although we can impose upon attor-

---

5. In this case, the name of the attorney was not entered in the docket, and even the transcript states that Ouellette was not represented. Only the fact that the court stated the attorney's name in the mass instruction and the hand-written notation on the back of the criminal complaint provide us with information about the lawyer for the day. From transcripts and docket entries in other cases that we have seen, as well as our individual experiences with lawyers for the day in the trial courts, we surmise that the practices regarding the formality of appearances of the lawyers for the day vary from court to court. Neither the Maine Bar Rules nor the Maine Rules of Criminal Procedure speak specifically to the appointment of lawyers for the day.

neys who formally enter their appearance for defendants in criminal cases the burden of advising their clients of constitutional and other rights and procedures regarding the criminal case, we have not explicitly imposed the same on lawyers for the day. For that reason, we cannot presume, as we did in *Gordon*, that the attorney fulfilled the duty of notifying Ouellette about her constitutional rights, including her right to a jury trial. If the lawyer for the day had affirmatively stated to the court that he had advised Ouellette and Ouellette understood the information and rights required by M.R.Crim. P. 5, then a finding that Ouellette knew about her jury trial right might be warranted. However, the mere fact that a lawyer for the day stands with the defendant when she is arraigned is not enough to satisfy the requirement that the defendant knew about her jury trial right.

[¶ 28] For the foregoing reasons, we conclude that Ouellette did not knowingly, intelligently, and voluntarily waive a jury trial.[6]

The entry is:

Judgment vacated. Remanded for further proceedings consistent with this opinion.

---

6. Because we conclude that Ouellette did not knowingly and intelligently waive a jury trial, we do not reach the question of whether her request for a jury trial on the date of trial could be considered a withdrawal of a waiver. Some states grant defendants an absolute right to withdraw jury trial waivers while other states leave it to the discretion of the court to permit a withdrawal. See *State v. Sweeney*, 178 Vt. 1, 869 A.2d 137, 139–40 (2005), and *Marquez v. State*, 921 S.W.2d 217, 220–23 (Tex.Crim.App.1996), for a collection of cases regarding withdrawals of jury trial waivers.