MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2014 ME 16
Docket:        Ken-12-194
Argued:        April 10, 2013
Decided:       February 11, 2014

Panel:         SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and
               JABAR, JJ.
Majority:      SAUFLEY, C.J., and LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.
Concurrence:   SAUFLEY, C.J.
Dissent:       ALEXANDER, J.

STATE OF MAINE

v.

SETH J. HILL

SILVER, J.

[¶1]   Seth J. Hill appeals from a judgment of conviction of criminal OUI

(Class D), 29-A M.R.S. § 2411(1-A)(C)(1) (2013) and refusing to sign a uniform

summons and complaint (Class E), 29-A M.R.S. § 2601(10) (2013), entered in the

trial court (*Wheeler, J.*) following a jury trial.  Hill argues that the trial court erred

in concluding that he voluntarily, knowingly, and intelligently waived his

constitutional right to be assisted by counsel at trial, and in admitting in evidence

Hill's booking photograph and testimony regarding administration of

"non-standard" field sobriety tests.  We focus on Hill's claim that he did not

properly waive his right to counsel.  Because we conclude that Hill did not

2

voluntarily, knowingly, and intelligently waive his constitutional right to counsel, we must vacate the judgment.

## I. BACKGROUND

[¶2]   On September 12, 2011, Hill was charged with criminal OUI and refusing to sign a uniform summons and complaint.  At his arraignment on September 20, 2011, Hill moved for appointment of counsel.  The court appointed counsel to represent Hill on September 22, 2011, and, at Hill's request, the case was transferred to the Superior Court and set for a jury trial.

[¶3]   At a docket call on December 6, 2011, Hill's counsel moved to withdraw, indicating that Hill had asked that counsel "recuse" himself from the case and that Hill intended to proceed pro se.  After telling counsel, "I will allow you to withdraw," the court (*Murphy, J.*) appropriately asked Hill whether he wanted the court to appoint a different attorney, informed Hill of his right to the representation of counsel at the State's expense, and noted that the OUI charge carried a mandatory minimum jail sentence.  Hill maintained that he wished to represent himself, and that he had enough time to come to that decision.  The court asked Hill whether he had been charged with anything in the past, to which Hill replied, "I don't think to this severity."  When asked whether he understood "how a trial works," Hill replied, "Well, yeah, but not—not exactly, you know."  The court reiterated that it had "an obligation to provide an attorney if [Hill] want[ed]

one," but Hill again indicated that he wished to represent himself. The court then stated that Hill's attorney was "relieved of [his] obligation." Immediately following that statement, Hill's now-former counsel added: "[I]f it puts your mind at ease, Your Honor, we have discussed this. Mr. Hill is highly intelligent . . . and I believe he knows—he's making a knowledgeable and informed decision. It may not be the decision I would recommend, but he knows what he's doing."

[¶4] On March 8, 2012, the court (*Mills, J.*) conducted jury selection with Hill present and participating without counsel. On March 28, 2012, the court (*Wheeler, J.*) held a jury trial at which Hill represented himself. The record contains no evidence that Hill's decision to represent himself was addressed either during jury selection or at the start of trial. The jury found Hill guilty on both counts, and the court sentenced Hill to ninety-six hours in the county jail, suspended his license to operate a motor vehicle for ninety days, imposed a $600 fine on the OUI charge, and imposed a $100 fine for refusing to sign a uniform summons and complaint. The court suspended the execution of Hill's sentence pending this timely appeal.

## II. DISCUSSION

[¶5] The Sixth Amendment guarantees criminal defendants the right to counsel at "critical stages" of the criminal process. *State v. Watson*, 2006 ME 80, ¶ 17, 900 A.2d 702 (quotation marks omitted); *see also* U.S. Const. amend. VI;

4

Me. Const. art. I, § 6.[1]  As we have recognized, however, "[c]onstitutional rights, including the right to counsel, may be waived as long as the waiver is voluntary, knowing, and intelligent." *Watson*, 2006 ME 80, ¶ 15, 900 A.2d 702.  "[B]ecause it is a fundamental constitutional right, the right to representation by counsel requires that every reasonable presumption must be indulged against waiver." *Id.* "[W]hen considering challenges to a trial court's determination that a criminal defendant effectively waived the right to representation by counsel," we "apply a bifurcated standard of review, reviewing any express or implicit factual findings for clear error, and the legal conclusion to be drawn from those facts de novo." *Id.* ¶¶ 29, 31.

[¶6]  In determining whether a defendant's waiver of the right to counsel was voluntary, knowing, and intelligent, courts consider "whether the defendant was informed of the right to counsel by the court, as well as the totality of relevant circumstances including the background, experience, and conduct of the accused." *Id.* ¶ 17 (quotation marks omitted).  At the trial stage, specific warnings are required because "counsel is required to help even the most gifted layman follow the procedural and technical requirements of the trial process." *Id.* ¶ 18 (quotation marks omitted).

---

[1]  The right to counsel afforded by the Maine Constitution is coextensive with that of the Sixth Amendment. *State v. Watson*, 2006 ME 80, ¶ 14, 900 A.2d 702.

[¶7]   Like the United States Supreme Court, we have declined to adopt standardized, "*Miranda*-like warnings of the risks of self-representation and the benefits of counsel."  *Id.* ¶ 22 (quotation marks omitted).  We have, however, identified three elements that the trial court should address with the defendant on the record in some fashion:

> (1) the right to be represented by a lawyer at trial and the right to be considered for a court-appointed lawyer if the defendant cannot afford to hire a lawyer; (2) that the defendant will be held to the same standards as a lawyer and the trial court will not aid the defendant in his defense; and (3) that it is risky for persons untrained in the law to represent themselves because, unlike lawyers, they are not trained to identify possible defenses, follow the rules of procedure and the rules of evidence, or conduct a trial, including selecting a jury, questioning witnesses, admitting and objecting to evidence, and arguing the case.

*Id.* ¶ 23.  "The level of detail of the information provided by the court may be calibrated to the defendant's individual circumstances."  *Id.*  We have emphasized that a defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open."  *Id.* ¶ 24 (quoting *Faretta v. California*, 422 U.S. 806, 835 (1975)).[2]

[¶8]   Although we consider the totality of the relevant circumstances, our review of a court's acceptance of a defendant's waiver of counsel ordinarily begins

---

[2]   Such warnings are sometimes referred to as "*Faretta* warning[s]" or a "*Faretta* inquiry" after the United States Supreme Court's decision in *Faretta v. California*, 422 U.S. 806 (1975).  *See, e.g., United States v. Francois*, 715 F.3d 21, 30 n.3 (1st Cir. 2013) (quotation marks omitted).

and ends with the record of the court's colloquy. In the absence of warnings or information from the court, the surrounding circumstances will establish a valid waiver only in "exceptional" cases. *Id.* ¶ 25; *see also United States v. Forrester,* 512 F.3d 500, 506-07 (9th Cir. 2008) (stating that, "[o]rdinarily, only the defendant's colloquy with the court at the *Faretta* hearing is relevant to the waiver analysis," but recognizing a "limited exception" where "the record as a whole reveals a knowing and intelligent waiver" (quotation marks omitted)). In such exceptional cases, the record must reflect "that the defendant was aware of the existence of technical rules and that presenting a defense is not just a matter of telling one's story." *Watson,* 2006 ME 80, ¶ 25, 900 A.2d 702 (quotation marks omitted); *see also United States v. Mohawk,* 20 F.3d 1480, 1484-85 (9th Cir. 1994) (concluding that a defendant's waiver was invalid where the record did not reflect that the court administered warnings or that the defendant had "any legal training, specialized education, or unusual background" indicating that "he truly understood the implications of his decision to represent himself" (quotation marks omitted)). The ultimate quality of a defendant's self-representation at trial is not dispositive, and, as here, often not helpful in determining whether the totality of the circumstances establishes that a defendant's waiver of counsel was voluntary, knowing, and intelligent. *See Mohawk,* 20 F.3d at 1485 ("The manner in which a

defendant conducts his defense cannot establish his state of mind at the time he opted for self-representation." (quotation marks omitted)).

[¶9] In *Watson*, we addressed challenges to the validity of waivers of counsel in two cases consolidated for purposes of briefing and argument. 2006 ME 80, ¶¶ 1-2, 900 A.2d 702. In one case, *State v. Watson*, the defendant was not directly warned of the dangers of self-representation. *Id.* ¶ 32. Nevertheless, because the defendant demonstrated an understanding of his right to counsel and the charges against him and received a detailed explanation of the trial process from the trial court, we concluded that his waiver was voluntary, knowing, and intelligent. *Id.* ¶¶ 32-33. In the companion case, *State v. Blumberg*, however, we concluded that the defendant did not knowingly and intelligently waive his right to counsel and therefore vacated his conviction because there was "simply no basis to conclude from the trial record" that the defendant had been warned of "the pitfalls of proceeding to trial without counsel." *Id.* ¶¶ 34-36 (quotation marks omitted).[3]

---

[3] The dissenting opinion takes issue with our reliance in *Watson* on our earlier decision in *State v. Tomah*, 560 A.2d 575 (Me. 1989), because we had "disavowed" portions of *Tomah* in *State v. Morrison*, 567 A.2d 1350, 1353 (Me. 1990). Dissenting Opinion ¶¶ 34, 35 n.7. Contrary to the dissent's representations, *Morrison* did not disavow any part of *Tomah*; rather it disavowed a reading of *Tomah* that would require prophylactic, *Miranda*-like warnings in order for a waiver of counsel to be effective:

> We refuse to create any kind of prophylactic rule by which the conviction of any *pro se* defendant would be automatically vacated, regardless of the particular facts and circumstances surrounding that defendant's waiver of counsel, if the trial court failed to give the defendant *Miranda*-like warnings of the risks of self-representation and the

8

[¶10]  Here, none of the trial judges who presided over the docket call, jury selection, and trial expressly determined that Hill had voluntarily, knowingly, and intelligently waived his right to counsel.  The record reflects that Hill was aware of his right to counsel.  He had been represented by court-appointed counsel and, in addition, the docket call justice told him that he had a right to court-appointed counsel.  Thus, the first *Watson* element was satisfied.  *See id.* ¶ 23.  No evidence in the record demonstrates, however, that Hill was informed prior to the commencement of trial as to the second element—that he would be held to the same standards as a lawyer and that the trial court would not aid him in his defense—or the third element—that it would be unwise for him to represent himself because he would be expected to follow the same procedural and evidentiary rules as a trained attorney.  *See id.*  Neither the Constitution nor our

---

benefits of counsel on the record.  Neither Supreme Court case law nor our own lays out any such prophylactic rule.  If our recent opinion in *State v. Tomah* can be read to that effect, we take this opportunity to disavow that reading.

*Morrison*, 567 A.2d at 1353 (citation omitted).  *Watson*—in which the dissenting justice in this case was part of the majority—relied on *Tomah* because *Tomah*, like *Watson* and *Morrison*, concluded that *Miranda*-like warnings are not required:

Because waiver is dependent on the facts and circumstances of each case, it is not possible to specify the elements of an adequate basis for a finding of waiver.  We have no trouble, however, in concluding that the present record is woefully inadequate to support the finding.

*Tomah*, 560 A.2d at 576; *see also Watson*, 2006 ME 80, ¶¶ 21-22, 900 A.2d 702 (discussing *Tomah* and stating that "we . . . decline[] to adopt fixed '*Miranda*-like warnings of the risks of self-representation and the benefits of counsel' . . . ." (quoting *Morrison*, 567 A.2d at 1353)).

precedents require specific words from the court, but both require that the *Watson* elements be explained to criminal defendants. *See id.* ¶¶ 22-23.

[¶11]  We cannot infer from this record that Hill had such basic knowledge or was prepared to proceed without that knowledge, particularly because Hill's response to the court's question of whether Hill understood "how a trial works" was "Well, yeah, *but not—not exactly, you know*." (Emphasis added.)  When the court inquired about Hill's familiarity with the justice system, Hill indicated that he had never been charged with anything of the same "severity" as the charges at issue—a Class D and Class E offense.  Although the attorney who had, until seconds before, acted as Hill's counsel volunteered that he had "discussed this" with Hill, and that he was confident that Hill was "highly intelligent" and "making a knowledgeable and informed decision," the record is not sufficient to allow us to infer that former counsel's conversation with Hill included a discussion of the elements we emphasized in *Watson*.  In addition, it is important to note that counsel had already been relieved of representation of Hill at Hill's request.  The record does not reflect what caused the breakdown in the attorney-client relationship.  Counsel was speaking for Hill at a time when he no longer represented him.  The waiver of a criminal defendant's fundamental constitutional right to counsel must be clear on the record. *See id.* ¶¶ 23-25.

[¶12] "The denial of the right to counsel is a structural error for which harm is presumed because it casts such doubt on the fairness of the trial process . . . that it can never be considered harmless error." *Id.* ¶ 36 (quotation marks omitted). Hill's own responses to the court indicated that he did not understand the trial process. Counsel's statements regarding Hill's waiver were insufficient to show a voluntary, knowing, and intelligent waiver. In addition, counsel spoke on Hill's behalf after he had been discharged. Because the record does not reflect—and we cannot infer—that Hill knew of the pitfalls of proceeding to trial without counsel, we must vacate Hill's conviction and remand for a new trial. Accordingly, we do not reach the other issues Hill raises on appeal.[4]

The entry is:

> Judgment vacated. Remanded for further proceedings consistent with this opinion.

---

[4] We are puzzled by the dissent's reference to *State v. Wiley*, 2013 ME 30, 61 A.3d 750, because our holding in *Wiley*, and the dissent's disagreement with it, are completely irrelevant to this case. Regardless, the dissenting opinion mischaracterizes our holding in *Wiley*, stating among other things that it "abandoned our own past practice and precedent, and ignored current federal precedent." Dissenting Opinion ¶ 43. In *Wiley*, we applied long-standing Maine precedent that requires proof beyond a reasonable doubt to establish the voluntariness of a confession for purposes of article I, section 6 of the Maine Constitution, and not the less demanding standard of proof by a preponderance of the evidence applied by the federal courts for purposes of the Fourteenth Amendment of the Federal Constitution. 2013 ME 30, ¶ 15, 61 A.3d 750 ("A confession is admissible in evidence only if it was given voluntarily, and the State has the burden to prove voluntariness beyond a reasonable doubt." (citing *State v. McCarthy*, 2003 ME 40, ¶ 12, 819 A.2d 335)); *see also State v. Rees*, 2000 ME 55, ¶ 9, 748 A.2d 976 ("Although we may look to the construction of federal constitutional provisions in U.S. Supreme Court cases and apply the same construction as far as possible, we are not confined to that construction when . . . a more protective standard is warranted under Maine law."); *State v. Collins*, 297 A.2d 620, 625-27 (Me. 1972) (holding that the State must prove the voluntariness of a confession beyond a reasonable doubt despite federal precedent requiring only proof by a preponderance of the evidence).

SAUFLEY, C.J., concurring.

[¶13]  I join the opinion of the Court, and I write separately and respectfully to emphasize my disagreement with the dissent of my esteemed colleague, who concludes that the opinion of the Court changes practice regarding a defendant's decision to go to trial without counsel.  Because I conclude that the Court has done no such thing, and I view this case as being much simpler than does the dissent, I write to clarify the circumstances under which this challenge presents itself to the Court.

[¶14]  Hill received court-appointed counsel, worked with that counsel, and then, at a docket call, declared that he could no longer work with the attorney and would not accept the attorney's representation.  Counsel, appropriately, withdrew from the representation.  Hill then indicated to the court that he did not want substitute appointed counsel.  In reminding Hill, at this docket call, that he had the right to court-appointed counsel, the judge made appropriate efforts to assure that Hill had access to an important resource that was available to him.

[¶15]  The difficulty in this case arose, I believe, as a result of what may have been a gap in the record or a simple misunderstanding among judges.  The record available to us contains no information regarding a colloquy with the court

*at trial* related to Hill's self-representation but rather includes only his preliminary discussion with the judge at the call of the docket. Thus, probably as a result of the timing of the separate events, there never came a point at which a judge made the explicit determination that Hill understood what was necessary to represent himself in a trial. The judge calling the docket likely assumed that, in the absence of a possible admission of guilt and entry of a plea agreement, the ordinary colloquy would occur at jury selection or trial. And the judges selecting the jury and presiding over the trial likely assumed that the colloquy and determination had already occurred. As the Court has today identified this as an issue, the best practice will be for the trial judge to engage in the brief colloquy with the defendant and enter the necessary findings at the earliest time at which the defendant indicates a desire to represent himself at trial. In the future, that should eliminate the problem identified in this case.

[¶16] Here, in the absence of a record demonstrating that the defendant had been advised of the pitfalls of self-representation and a finding that he knowingly, voluntarily, and intelligently chose, nonetheless, to go forward to trial without counsel, the Court is left with no choice but to remand for a new trial.

[¶17] The dissent's questioning of the Court's adherence to its well-established case law requiring that judicial finding is thus puzzling and causes me to note that, had the Court, in fact, abandoned its jurisprudence in this

important area of constitutional law, I would join such a dissent.  Because the Court has not done so, I remain with the Court.

---

ALEXANDER, J., dissenting.

[¶18]  I respectfully dissent.  Prior to waiver of counsel, the defendant consulted with counsel.  His counsel subsequently advised the court that the defendant was "highly intelligent" and "making a knowledgeable and informed decision" to proceed without counsel.   After being advised of his right to counsel by the court, the defendant freely elected to proceed without counsel and now seeks to reverse his course, the result not being to his liking.   The Court appropriately cites the Sixth Amendment of the United States Constitution as establishing the right to counsel at issue in this appeal.  It then observes that "[t]he right to counsel afforded by the Maine Constitution is coextensive with that of the Sixth Amendment."   Court's Opinion ¶ 5 n.1.   This statement cites our past precedent, *State v. Watson*, 2006 ME 80, ¶ 14, 900 A.2d 702, and accurately reflects our past practice.

[¶19]  After paying homage to our past practice and precedent, the Court's opinion departs from it and dramatically changes well-established practice for accepting defendants' choices to proceed without counsel.  Specifically, the Court:

(1) abandons the totality of circumstances test that has served us well for decades;

(2) reverses past practice that required development of a record of what a defendant knew regarding the risks and consequences of proceeding without counsel—including what the defendant here learned in consultation with counsel— before deciding that a court's colloquy with a defendant was insufficient;

(3) holds that statements by counsel, after consultation with a defendant charged with misdemeanors, that the defendant understands a right and is waiving that right, are insufficient to support waiver of that right; and

(4) despite its disclaimer, mandates a mechanistic on-the-record colloquy between the defendant and the trial court that "begins and ends" the record that will be required to support allowing a defendant charged with misdemeanors to proceed without counsel, Court's Opinion ¶ 8.

[¶20] The changes mandating a direct colloquy between the trial court and a misdemeanor defendant for a waiver of counsel to be valid, and limiting appellate review to the text of that colloquy, will impose a considerable additional workload on the trial courts at arraignments and other pretrial proceedings.

[¶21] The Court's opinion may have another unintended consequence. By asserting that it is only applying current law on waiver of counsel, rather than acknowledging that it is changing current law and practice, the Court's opinion

may invite a flood of post-conviction petitions by unrepresented defendants asserting that their convictions resulted from a flawed process, particularly insufficient evidence of a colloquy directly between the trial court and the defendant.

[¶22] The Court changes the law regarding waiver of counsel by a misdemeanor defendant when the facts indicate that the waiver occurred in a direct colloquy between the court and the defendant, immediately after consultation with counsel, and with counsel still present and participating in the colloquy. Specifically, when Hill's case was called at the docket call, Hill's appointed counsel moved to withdraw, indicating that Hill had asked that counsel "recuse" himself from the case and that Hill wanted to represent himself at trial. After the court's colloquy with Hill and its indication that it would allow Hill to represent himself, Hill's counsel stated: "[I]f it puts your mind at ease, Your Honor, we have discussed this. Mr. Hill is highly intelligent . . . and I believe he knows—he's making a knowledgeable and informed decision. It may not be the decision I would recommend, but he knows what he's doing."

[¶23] It will come as a considerable surprise to the trial courts to learn that, after hearing such a representation by a defendant's counsel regarding waiver of a fundamental right, the trial court, in every misdemeanor case, must engage in a

16

direct and structured colloquy with a defendant before approving the waiver of that right.

[¶24] Until today, we have regularly relied on such representations by counsel to support approval of waivers of critical rights. *See State v. Ford*, 2013 ME 96, ¶ 21, 82 A.3d 75 ("It is a lawyer's duty to advise his or her client of all rights, including the right to testify. In the absence of evidence to the contrary, we must assume that [the defendant] was properly advised by his attorneys." (citation omitted)); *State v. Ouellette*, 2006 ME 81, ¶ 27, 901 A.2d 800 ("[W]e can impose upon attorneys who formally enter their appearance for defendants in criminal cases the burden of advising their clients of constitutional and other rights and procedures regarding the criminal case . . . .").

[¶25] This is consistent with United States Supreme Court precedent. In discussing whether a guilty plea was entered "voluntarily, knowingly, and intelligently," even in the context of a felony matter, the Supreme Court has held that "[w]here a defendant is represented by competent counsel, the court usually may rely on that counsel's assurance that the defendant has been properly informed of the nature and elements of the charge to which he is pleading guilty." *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) (assessing the validity of a plea to felony charge when counsel represented that he explained to the defendant all elements of the charge and the defendant confirmed that the representation was true); *see also*

*United States v. Nguyen*, 618 F.3d 72, 75 (1st Cir. 2010) (noting that the trial court "was entitled to rely on [counsel's] representations" regarding explanation of defendant's rights and defendant's understanding of rights and processes).

[¶26]  To vacate the jury's verdict, the Court ignores recent First Circuit precedent addressing the nature of the colloquy required when, as occurred here, a defendant, after consultation with counsel, discharges counsel and seeks to proceed to trial self-represented.  Federal precedent is—or has been—important because, as we said in *State v. Watson*, 2006 ME 80, ¶ 14, 900 A.2d 702, "[t]he right to counsel afforded by article I, section 6 of the Maine Constitution is commensurate with that of the Sixth Amendment of the federal constitution."

[¶27]  Just last year, the First Circuit comprehensively addressed the constitutional standards for trial court approval and appellate review of a defendant's waiver of his or her right to counsel at trial.  *United States v. Francois*, 715 F.3d 21 (1st Cir. 2013), involved felony charges: illegal acquisition and possession of firearms by a felon and improper use of stolen identity documents. *Id.* at 24.  Francois refused to cooperate with appointed counsel in preparing his defense.  *Id*. at 26-27.  When the matter came on for trial, Francois stated that he wanted to represent himself.  *Id*. at 27.  The court warned Francois that representing himself was a "terrible idea," a "catastrophic mistake," and a "very bad idea."  *Id.* at 27.  However, the court "did not go beyond these dire

generalizations to give specific examples" of the risks and consequences of self-representation. *Id*. at 30. Francois persisted in his desire to represent himself. *Id*. at 27. The court allowed Francois to begin the trial representing himself with back-up counsel. *Id.* After Francois began the trial representing himself, back-up counsel took over representation during the trial. *Id*. at 27-28.

[¶28] Following the jury's verdict convicting Francois on all counts, Francois appealed, asserting, among other issues, that the District Court erred in allowing him to represent himself without engaging him in a direct colloquy regarding the risks and consequences of self-representation. *Id*. at 28. The First Circuit affirmed. *Id.* at 31.

[¶29] The First Circuit recognized that the District Court had given Francois imperfect advice regarding the risks and consequences of proceeding self-represented. *Id*. at 30-31. Despite this inadequate inquiry, the First Circuit held that it would consider the totality of the circumstances, including the record from pretrial proceedings, Francois's interactions with counsel, and his discussions with the trial court regarding his rights generally and his choice to proceed self-represented. *Id.* From the totality of the available record, the First Circuit inferred that Francois was adequately aware of the risks and consequences of proceeding self-represented, and that the District Court's imperfect advice

regarding the risks and consequences of self-representation did not constitute reversible error. *Id.*

[¶30] Specifically, the First Circuit held that, even when a court's *Faretta* warning[5] is "less thorough than it might be, we may nevertheless affirm a district court's decision to allow a defendant to proceed pro se if 'the record amply supports the lower court's conclusion that [the defendant] was fully aware of the disadvantages he would face as a pro se defendant.'" *Id.* at 30 (quoting *United States v. Kneeland*, 148 F.3d 6, 12 (1st Cir. 1998)). Here, the Court refuses to require development of a record, so we can never know if "the record amply supports the lower court's conclusion that [the defendant] was fully aware of the disadvantages he would face as a pro se defendant." *Id.*

[¶31] Over twenty years ago, in *State v. Morrison*, 567 A.2d 1350, 1351-53 (Me. 1990), we comprehensively addressed the standard of review when a defendant chose to represent himself or herself at trial, was convicted and then claimed that the court erred in allowing the defendant to proceed with his or her choice of self-representation. In *Morrison*, a former law enforcement officer was

---

5 The First Circuit's reference to a "*Faretta* warning" referenced *Faretta v. California*, 422 U.S. 806 (1975), which held that a defendant could represent himself at trial if, after consideration of the totality of the circumstances, the trial court determined that the waiver of counsel was knowing and voluntary. *Id.* at 835.

20

indicted for rape (Class A), 17-A M.R.S.A. § 252 (1983)[6] and related charges. *Id.* at 1351 & n.1. He appeared at arraignment, was advised of his rights, and indicated his choice to represent himself. *Id.* Family, friends, and law enforcement officers warned Morrison of the risks of self-representation and urged him to retain counsel. *Id*. at 1352. Morrison subsequently spoke directly with the District Attorney's Office and proceeded to jury selection and a jury trial, representing himself at all stages. *Id.* at 1351-52. He was convicted of all counts. *Id*. at 1351.

[¶32] Following conviction, Morrison, with newly retained counsel, filed a motion for a new trial, asserting that he had not made a knowing and intelligent waiver of his right to counsel. *Id*. at 1351. After two days of testimonial hearings, the trial court found that Morrison's waiver of counsel and choice to represent himself were knowing and intelligent and denied the motion. *Id*. at 1351. Morrison appealed, maintaining that the court should not have permitted him to exercise his choice to represent himself. *Id*. The record indicated that while the trial court had advised Morrison of his rights and had assured that Morrison knew what his rights and responsibilities were in participating in jury selection and the

---

[6]   Title 17-A M.R.S.A. § 252 was subsequently amended and was ultimately repealed by P.L. 1989, ch. 401, pt. A, § 3 (effective Sept. 30, 1989), which simultaneously repealed and replaced 17-A M.R.S. § 253 (Gross Sexual Assault).

trial process itself, the court had not, in a direct conversation, specifically warned Morrison of the risks and consequences of representing himself. *Id.* at 1352-53.

[¶33] Citing to United States Supreme Court precedent, we affirmed the conviction. *Id*. at 1351-53. We held that in evaluating Morrison's choice to proceed self-represented, we would look at the totality of the circumstances, including Morrison's knowledge of court processes as a former law enforcement officer, the rights and nature of the trial process that had been described to Morrison at his arraignment and prior to jury selection, and the possible consequences of the choice to plead or proceed to trial that Morrison had discussed with family, friends, and the District Attorney. *Id.* (citing *Faretta v. California*, 422 U.S. 806, 835 (1975), and *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). With this background, we were confident that Morrison had adequate knowledge of the risks and consequences of self-representation at trial and that the trial court's failure to specifically review with Morrison the risks and consequences of self-representation did not invalidate the process. *Id*.

[¶34] Rejecting Morrison's argument that we should adopt a rule requiring the trial court to conduct a mechanistic colloquy before approving a defendant's choice to proceed to trial self-represented, we held that:

> We refuse to create any kind of prophylactic rule by which the conviction of any *pro se* defendant would be automatically vacated, regardless of the particular facts and circumstances surrounding that

22

> defendant's waiver of counsel, if the trial court failed to give the defendant *Miranda* like warnings of the risks of self-representation and the benefits of counsel on the record. Neither Supreme Court case law nor our own lays out any such prophylactic rule.

*Id*. at 1353. We then expressly disavowed statements in an opinion issued the previous year, *State v. Tomah*, 560 A.2d 575 (Me. 1989), that could have been read to favor such a prophylactic rule. *Id*.

[¶35] *Watson* stands for the same proposition. In *Watson*, we observed that "[c]ourts evaluate whether a defendant's waiver of the right to counsel was voluntary, knowing, and intelligent by considering whether the defendant was informed of the right to counsel by the court, as well as the totality of relevant circumstances 'including the background, experience, and conduct of the accused.'" 2006 ME 80, ¶ 17, 900 A.2d 702 (quoting *Morrison*, 567 A.2d at 1352). We noted that Watson had not been directly advised of the risks and consequences of proceeding self-represented, *id*. ¶ 32, but, considering the totality of the circumstances of the advice Watson had received and the knowledge he had, we affirmed the conviction, *id*. ¶ 33.[7]

---

[7] In a companion case, *State v. Blumberg*, decided as part of the *Watson* opinion, we did vacate a conviction of an individual who had represented himself after the trial court, finding that he had sufficient resources to retain counsel, declined to appoint counsel. *State. v. Watson*, 2006 ME 80, ¶¶ 8-13, 34-36, 900 A.2d 702. The *Blumberg* opinion referenced excerpts from the paragraph in *Tomah* that had been explicitly disavowed in *Morrison*, 567 A.2d at 1353. *Id*. ¶ 35. Further, the *Blumberg* opinion is not entirely clear as to how trial court erred. Blumberg himself had implicitly acknowledged that there were risks and adverse consequences in proceeding self-represented. *Id*. ¶¶ 8-9. For that reason, he had requested that the court appoint counsel to represent him or to act as backup counsel. *Id*. ¶ 8. The court had declined to appoint counsel, not because it concluded that Blumberg had voluntarily and knowingly

[¶36] The same totality of the circumstances test should be applied to our review of Hill's after-the-fact challenge to being allowed to exercise his choice to represent himself, as in *Francois*, following consultation with his attorney. Having received assurance from defense counsel that Hill was knowledgeable and informed about his decision to proceed without counsel, and satisfying itself based on inquiry of Hill that he was acting voluntarily and wanted to waive counsel, the judge at the docket call had no obligation to inquire further. *See Bradshaw*, 545 U.S. at 183; *Nguyen*, 618 F.3d at 75; *Ouellette*, 2006 ME 81, ¶ 27, 901 A.2d 800.

[¶37] Unlike *Francois*, nothing in the record here indicates the nature and extent of Hill's attorney-client communications or what led counsel to advise the court that Hill was "making a knowledgeable and informed decision" to represent himself. However, some information about the extent of Hill's knowledge of the risks and consequences of an OUI conviction was indicated at sentencing. There, Hill indicated "no problem with the jail time and the fines" but asked that the OUI conviction be changed to "reckless endangerment or reckless driving." That comment referenced lesser offenses apparently discussed in plea negotiations with Hill but rejected by the State, as Hill stated "they were against that." The record

---

waived his right to counsel, but because it found that Blumberg had adequate resources to retain counsel on his own. *Id*. ¶¶ 10-11.

includes nothing regarding the nature and extent of plea negotiations that apparently occurred and the extent to which, as in *Morrison*, Hill may have learned about the risks and consequences of proceeding to trial without counsel.

[¶38]  The Court's refusal to require any record regarding the attorney-client communications that indicated that Hill was "making a knowledgeable and informed decision" is troubling.  In *Morrison*, we observed that "[n]ormally the record on a direct appeal is not adequate for us to review a defendant's claim that his waiver of counsel was defective," and that post-conviction review is better suited to the development of evidence focused on the facts and circumstances of the waiver of counsel "including the background, experience, and conduct of the accused."  567 A.2d at 1352.  In *Morrison*, we determined that two days of testimonial hearings on the motion for a new trial was an adequate substitute for a post-conviction hearing on the waiver of counsel issue, *id.*, and we decided *Morrison* relying primarily on information and findings from the hearing on the motion for a new trial.

[¶39]  Here, there has been no similar fact-finding proceeding to inform us of the nature and extent of discussions in attorney-client communications or plea negotiations, or of information in "the background, experience, and conduct of the accused," *Watson*, 2006 ME 80, ¶ 17, 900 A.2d 702 (quoting *Morrison*, 567 A.2d at 1352), that may have informed the court on Hill's knowledge of the risks and

consequences of self-representation. In its change of practice, the Court now holds that such an inquiry is irrelevant, as the record to be considered must "begin[] and end[]" with the structured on the record colloquy between the defendant and the trial court. Court's Opinion ¶ 8.

[¶40] The Court's opinion attaches significance to the fact that Hill's counsel's representation that Hill was highly intelligent, that he was making a knowledgeable and informed decision, and that "he knows what he's doing," came immediately after, rather than before, the trial court had approved counsel's motion to withdraw. Court's Opinion ¶ 11. However, there is no doubt that Hill's conference with counsel occurred before the colloquy with the trial court. If the totality of the circumstances standard of review remained valid, the substance of Hill's conference with counsel, not when it was disclosed to the trial court, would be the proper subject of inquiry in review of whether Hill's decision to proceed without counsel was voluntary, knowing, and intelligent. *See Ford*, 2013 ME 96, ¶¶ 18-23, 82 A.3d 75 (affirming convictions for attempted murder and other crimes by applying the totality of the circumstances test and assuming that Ford was properly advised by his attorneys in a case when there was no colloquy at all between the defendant and the court regarding defendant's fundamental right to testify or to remain silent, when the defendant contended on appeal that, as here,

his conviction should be vacated because there was no colloquy with the court regarding waiver of the fundamental right to testify).

[¶41] The concurring opinion observes that "in the absence of a record demonstrating that the defendant had been advised of the pitfalls of self-representation and a finding that he knowingly, voluntarily, and intelligently chose, nonetheless, to go forward to trial without counsel, the Court is left with no choice but to remand for a new trial." Concurring Opinion ¶ 16. The Court, of course, does have a choice, it can follow our past precedent and remand for findings to learn the totality of circumstances of what Hill knew and what he was advised by counsel and others regarding the risks and consequences of self-representation. Instead, the Court casts aside past precedent, dismisses any need for a totality of the circumstances inquiry, and announces that, henceforth, only the colloquy between that trial court and the defendant will be considered in review of waiver of the right to be represented by counsel.

[¶42] Trial courts must deal daily with dynamic and difficult live situations before them. Appellate review of those trial court actions even on a "cold" record is difficult enough, but such "cold" record review should be preferred to "no record" review. Deferentially evaluating trial court responses to such events on appeal cannot be done through mechanistic formulas or absolutist prohibitions that disregard the totality of the circumstances before the trial court; dismiss the need

for a record of what led to the defendant's actions in the trial court; and disrespect trial court actions that fail to perfectly apply formulaic rules to dynamic situations.

[¶43] The Court's opinion represents the second time recently that we have failed to give due deference to trial court responses to live proceedings, abandoned our own past practice and precedent, and ignored current federal precedent in order to vacate a criminal conviction by determining that the trial court failed to apply a newly announced formula or prohibition. *See State v. Wiley*, 2013 ME 30, 61 A.3d 750 (abandoning clear error review of trial court fact-findings, disregarding past practice and precedent in Maine and current federal precedent, and, in the name of de novo review, substituting the Court's own view about the facts, to vacate child sex abuse convictions with an announcement that, as a matter of law, interrogation using promises and inducements can render any resulting confession involuntary).[8] Our trial courts' approaches to dynamic and difficult situations deserve greater respect and deference, considering the totality of the circumstances before the trial courts, than is given by demands for perfection in application of mechanistic formulas or absolutist prohibitions.

[¶44] Because the record does not demonstrate that the advice Hill received from counsel and what he learned in plea negotiations or from other sources was

---

[8]  In a subsequent opinion, *State v. Lowe*, 2013 ME 92, ¶¶ 20-25, 81 A.3d 360, we have reinstated deferential, clear error review of trial court fact-findings regarding voluntariness of confessions.

insufficient to inform him of the risks and consequences of proceeding self-represented, his appeal should fail. Applying the proper totality of the circumstances test and considering the representations made by counsel after consulting with Hill, the record does not reflect that the advice that Hill received in this case was inadequate to convey a sufficient understanding of the risks and consequences of self-representation. *See Ford*, 2013 ME 96, ¶ 21, 82 A.3d 75 ("In the absence of evidence to the contrary, we must assume that [the defendant] was properly advised by his attorneys.").

[¶45] I would affirm the trial court's judgment or, in the alternative, I would remand for findings so that the totality of the circumstances of Hill's choice to proceed without counsel could be deferentially reviewed on appeal.

---

**On the briefs:**

Jeremy Pratt, Esq., Camden, for appellant Seth Hill

Maeghan Maloney, District Attorney, and Kristin Murray-James, Asst. Dist. Atty., Prosecutorial District IV, Augusta, for appellee State of Maine

**At oral argument:**

Jeremy Pratt, Esq. for appellant Seth Hill

Kristin Murray-James, Asst. Dist. Atty. for appellee State of Maine

Kennebec County Superior Court docket number CR-2011-834